## Julius K. Rose *et al.*

### *v.*

## Elnathan L. Sanderson.

38  247
25a  553

38  247
142  393
144  283

38  247
208  ²243

1. Estate by the curtesy—*act in relation to separate property of married women.* A life estate vested in the husband, at the time of the passage of the act, entitled: "An act to protect married women in their separate property," is not within the description, "of property belonging to any married woman as her sole and separate property."

2. Vested rights—exemption from execution—*legislative power.* A legislative enactment can not take from the husband a vested life estate, and give it to the wife, nor can it take away even an inchoate right of dower. *Quere.* How far a Legislature may go, in exempting the husband's life estate from execution under pretence of regulating remedies ?

3. Courts will do no violence to the language of a law, for the purpose of exempting property from the payment of just debts.

Appeal from the Circuit Court of Iroquois County.

This was a bill in chancery to set aside a levy under an attachment and execution levied upon the life estate of the appellant, Julius K. Rose, in certain lands, the fee whereof belonged to his wife, Ellen A. Rose. The bill set up, that the complainant had no leviable interest in the lands at the time of suing out the attachment, or at any time afterwards; and that under the law of this State the lands were the sole and separate property of Ellen A. Rose, and exempt from levy and sale, under any execution or attachment for the debts of Rose, her husband.

The defendant demurred to this bill, the demurrer was sustained by the court below, and the bill dismissed for want of equity, from which decree of dismissal, the complainants appealed to this court.

Mr. George Gardner, for appellants.

Mr. Eugene Canfield, for appellees.

Mr. Justice Lawrence delivered the opinion of the Court:

This was a bill in chancery to set aside a levy under an attachment and execution levied upon the life estate of the complainant, Julius K. Rose, in certain lands the fee whereof belonged to his wife and co-complainant, Ellen A. Rose. It is claimed that the husband's tenancy by the curtesy, is protected from levy under an execution against him, by virtue of the act entitled "An act to protect married women in their separate property," which went into force April 24th, 1861. In this case the lands descended to the wife, then married, from her grand-father, in 1859. The attachment, upon which the judgment was rendered against the husband, was levied May 10th, 1861. The bill states that there were children living at the date of the attachment, without stating when they were born. If born during the sixteen days intervening between the time when the act went into operation and the levy of the attachment, the husband, when the law took effect, was seized of an estate during coverture. If born before that time, he was seized of an estate for his own life, by the curtesy. We understand the counsel on both sides to speak of the husband as being vested with the latter estate when the act was passed, but, so far as the principle which governs the case is concerned, the precise quantity of his interest is immaterial. The question presented is, can the husband's estate in land, the fee of which is in the wife, be reached by execution against him, his estate having vested before the passage of the act above named. That act reads as follows:

" Be it enacted, &c., That all the property, both real and personal, belonging to any married woman, as her sole and separate property, or which any woman, hereafter married, owns at the time of her marriage, or which any married woman, during coverture, acquires, in good faith, from any person other than her husband, by descent, devise, or other-

wise, together with all the rents, issues, increase and profits thereof, shall, notwithstanding her marriage, be and remain, during coverture, her sole and separate property, under her sole control, and be held, owned, possessed and enjoyed by her, the same as though she was sole and unmarried; and shall not be subject to the disposal, control or interference of her husband, and shall be exempt from execution or attachment for the debts of her husband."

It will be observed that this act provides for three classes of cases:

1st. For property "belonging to any married woman, as her sole and separate property," at the time when the law was passed, or took effect.

2d. For the property of women thereafter to be married.

3d. For property thereafter to be acquired by married women.

The case at bar, if it comes within this act at all, would fall in the first class.

Can a life estate, already vested in the husband, be possibly considered as coming within the description of "property belonging to any married woman, as her sole and separate property?" That is to say, can the property of one person be justly described as "belonging" to another? This would be simply a contradiction in terms. Yet when this law was passed, the property in controversy, to wit: the life estate of the husband levied on, was as completely his as if his wife, before the marriage, had owned and conveyed it to him for a valuable consideration. The marriage was such a consideration, and the moment it occurred, the husband stood seized of an estate during coverture, in the realty hitherto belonging to his wife, by as complete a title as that by which he held his own lands in fee. From that time his life estate could, with no more propriety, be described as "belonging" to his wife, "as her sole and separate property," than could lands owned by him before the marriage, or the lands of any third person.

It is plain, then, that only by the most forced and unnatural

17—38TH ILL.

construction, can the language of this law be regarded as covering this case? Courts sometimes resort to forced constructions, and perhaps too freely, for the purpose of preventing great and manifest injustice. Is there any thing in this law which calls for a departure from the natural import of the language used? In all its clauses it aims to clothe married women, for the future, with the exclusive title to, and dominion over, their own property, and as an incident thereto, to protect it from execution for the debts of the husband. If it was the intention of the Legislature, in the clause of the act under consideration, to take from the husband a life estate, which had vested at the passage of the law, and give it to the wife, such intention was beyond their power of accomplishment. This is too well settled, in American jurisprudence, to need either discussion or the citation of authorities. This court held, in *Russell* v. *Rumsey,* decided at the Ottawa term, 1864, 35 Ill. 362, that a legislative enactment can not take away even an inchoate right of dower. If then the language of the first clause of this act admitted of such a construction as the counsel for appellant insists upon, such construction, as to the main object of the law, the vesting the title in the wife, could not be given to it without rendering this clause void. This is admitted by the counsel for the appellant, but he contends that the Legislature has the right to exempt the husband's life estate from execution. It is a vexed question, in American courts, how far the Legislature may go in this direction, under the pretence of regulating remedies, without violating the right. But conceding the power to the Legislature of withdrawing from the reach of an execution the estate of the husband in lands held in fee by the wife, courts will assuredly do no violence to the language of a law, for the purpose of exempting from the payment of just debts what might, in many instances, be large amounts of property. If the Legislature should desire to do this wrong to creditors, they must express their intention with reasonable certainty.

We hold then, that the language of the first clause of this

law can not, without a very forced construction, be held to apply to estates vested in the husband at the date of its passage, and that there is not the slightest reason why courts should seek, by such construction, to depart from the natural import of the language.

It is urged, however, that unless this is done the first clause of the act is nugatory, as property belonging to the wife "as her sole and separate property," in the technical sense of those words, needed no protection. Experience will probably demonstrate the contrary. It may be that, by the first clause of the law, the Legislature designed to give the wife legal remedies, as to her sole and separate property, in cases where hitherto she has been obliged to resort to the equitable side of the court. It may be that they intended to secure the wife already married, in regard to choses in action not yet reduced, by the husband, to possession. But it is not for us to indulge in hypotheses as to what cases it will be found to apply. It is enough that by no just rule of construction can it be made to cover the case at bar.

The case of *White* v. *Hildreth*, 32 Vermont, 265, is relied upon by the counsel for the appellant as an authority in point. In that case the court held that rents and profits of land, of which a debtor was tenant by the curtesy, could not be subjected, under the Vermont act, to the payment of his debts. But that act, in terms, exempted from execution for the debts of the husband " the rents, issues and profits of the real estate of any married woman, *and the interest of her husband*, in her right, in any real estate which belonged to her before marriage, or which she may have acquired by gift, grant, devise, or inheritance during coverture." When our Legislature makes a similar exemption, the case will be in point, but it has not done so in the act under consideration. Unlike the Vermont law, our act does not seek to exempt from execution the existing "interest of the husband."

*Decree affirmed.*