JAMES BOZARTH *et al.*

*v.*

WILLIAM LARGENT.

*Filed at Springfield April 5, 1889.*

1. ESTATE OF HUSBAND IN WIFE'S LAND—*at common law—of the estate during coverture—and estate by the curtesy—Married Woman's act of 1861.* At the common law, a husband held, in right of his wife, all her lands in possession, and owned the rents and profits thereof absolutely. The birth of issue was not necessary to this right of the husband, which continued during the joint lives of the husband and wife. It was called an estate during coverture, or the husband's freehold estate *jure uxoris.*

2. This estate of the husband in his wife's lands differed from curtesy initiate in its being a vested estate in possession, while the latter is a contingent future estate, dependent upon the birth of issue. It was held in right of the wife, and was not added to or diminished when curtesy initiate arose. Subject to the husband's beneficial enjoyment during coverture, the ownership remained in the wife, and on dissolution of the marriage the property was discharged from such estate of the husband.

3. Where there was marriage, seizin of the wife and birth of issue capable of inheriting, the husband, by the common law, took an estate in the wife's lands during coverture. This was an estate of tenancy by the curtesy initiate, which would become consummate upon the death of the wife in the lifetime of the tenant. Upon the death of the wife, a tenant by the curtesy was seized of an estate of freehold, which was subject to alienation, and was liable to be taken on execution for his debts.

4. The effect of the Married Woman's act of 1861 was to abrogate the husband's estate in his wife's lands, or the estate he would have had at common law during the coverture, when the marriage took place after that act took effect, and, consequently, during the coverture he would have no estate therein liable to execution or attachment. This act did away with the estate he would have had, at common law, growing out of the marital relation.

5. The general effect of statutes of this kind is to destroy the marital rights of the husband in his wife's estate, but a statute may exempt her property from his debts without in any way destroying his rights therein. Unless tenancy by the curtesy is destroyed by the statute by express words or necessary implication, or by the wife's disposition of her property by virtue of her power over it, the husband will be held to have an estate by the curtesy at her death.

6. The purpose and effect of the Married Woman's act of 1861 were to secure to the wife the control of her separate property during coverture, during which time the husband's common law rights in her property are suspended. It did not destroy the estate of curtesy, but after the passage of that act, and prior to the passage of the act of 1874, the husband, on his wife's death, leaving issue of the marriage, took a life estate in her land as tenant by the curtesy.

7. Where a marriage took place in 1863, the wife having lands inherited from her father, and she died in 1868, leaving issue of the marriage, it was *held,* that on her death the husband took a life estate in her land, which was subject to sale on execution against him.

8. REDEMPTION *by judgment creditor—validity of original sale essential—and herein, of the effect of mere errors or irregularities.* If a foreclosure sale of land is void for any cause, a judgment creditor redeeming therefrom will acquire no title under his purchase, for the reason that his rights, like those of the first purchaser, are dependent upon a valid judgment or decree and sale.

9. But where the trial court had jurisdiction of the subject matter and of the parties, mere errors and irregularities can not be taken advantage of to defeat a sale made under a decree in the cause, or to defeat a sale made on a redemption by a judgment creditor.

10. SAME—*sale of lands en masse—as affecting the right of redemption—and the mode.* Although distinct tracts of land be sold *en masse* on decree of foreclosure, this will not render the sale void. At most it will be a ground for setting the sale aside, on proper application made in apt time. It can not be urged to defeat the sale in an action of ejectment.

11. But where several tracts of land are sold *en masse* on a decree of foreclosure, neither the original owner nor his judgment creditor can redeem a part of the lands so sold, but must redeem the whole. If the tracts are sold separately, either one may redeem any tract so sold. The judgment creditor's right to redeem is no greater or more extensive than that of his debtor.

12. SAME—*who may question the regularity of a redemption by judgment creditor.* After the expiration of twelve months from the sale, the right of the judgment debtor is gone, and he no longer has any interest in the premises, and can not take advantage of irregularities in making redemption by his judgment creditor, and his acquisition of title by virtue of a sale under such redemption. If the purchaser at the first sale makes no objection to the validity of the redemption, and receives the redemption money, the redemption will be complete, and the original debtor can not object that the sale on redemption was *en masse,* even if it could have been made in any other way.

13. Where the estate of a life tenant by the curtesy is sold on a decree of foreclosure against him, his heirs (the remainder-men) can not object to a sale on redemption because the redemption was made in the name of a judgment creditor of the life tenant after he has assigned his judgment, instead of being made in the name of the assignee.

14. SAME—*time of making the deed—in case of purchase by redeeming creditor—the statute construed.* On a redemption by a judgment creditor, the statute provides that the redeeming creditor shall be deemed as having bid at the sale the amount of the redemption money paid by him, with interest thereon, and costs, and that if no greater amount is bid the premises shall be struck off to such judgment creditor, and the officer shall "forthwith" execute a deed of the premises to him : *Held,* that the word "forthwith" is not mandatory, but directory, only, and that a deed made thereafter, even after the sheriff who made the sale goes out of office, is good and valid to pass the title.

15. INURING OF TITLE—*to a mortgagee—of an es'ate by the curtesy.* A husband and wife in 1868 executed their mortgage on the lands of the latter, the former having no present estate in the premises. The mortgage contained covenants of good right to convey, seizin in fee, and of general warranty. The wife shortly afterward died, leaving issue of the marriage, so that the husband succeeded to an estate as tenant by the curtesy for life : *Held,* that under the covenants in the mortgage his life estate inured to the benefit of the mortgagee, and passed under a sale under a decree of foreclosure of the mortgage.

16. APPEAL—*what questions involved—claim of homestead, in respect to which there was no evidence.* In an action of ejectment to recover land sold under a decree of foreclosure, no proof was offered at the trial tending to show that the premises when sold, or when the mortgage was given, were occupied by the mortgagors, or either of them, as a homestead, nor was it shown they were so occupied at any time : *Held,* on error, that the question of a homestead right, to defeat the sale, was not presented for adjudication, and could not be considered.

17. SERVICE OF PROCESS—*in chancery—sufficiency of return.* Summons in a suit to foreclose a mortgage was properly issued, and made returnable to the next term. The return of service was: "Executed this writ by reading the same to the within A, B, C and D, and by delivering to each a true copy hereof, this 10th day of April, 1872," and it was properly signed by the sheriff, and the service was in apt time : *Held,* that the return showed a good service, and that the fact of the reading of the summons did no harm, and might be disregarded.

WRIT OF ERROR to the Circuit Court of Tazewell county ; the Hon. N. W. GREEN, Judge, presiding.

This was an action of ejectment, brought by James Bozarth, Mary L. Bozarth and Ida B. Cook, the heirs-at-law of Louisa Bozarth, deceased, against William Largent, for the recovery in fee of the east half of the south-west quarter of section 17, and the west half of the south-west quarter of the south-west quarter of section 8, all in town 23 north, range 2, west of the third principal meridian, in Tazewell county. General issue was filed, and a trial had, resulting in a finding and judgment for defendant. Plaintiffs below prosecute this writ of error.

The facts are as follows: Louisa Bozarth, now deceased, being the owner in fee of said lands, which she had inherited from her father, was on August 19, 1863, married to Asa Bozarth. They lived together as husband and wife until November 1, 1868, when she died intestate, leaving her husband, who is still living, and the plaintiffs, her children and only heirs-at-law, surviving her. On March 5, 1868, she and her husband executed their mortgage upon the lands in controversy, and other lands of her husband, to Anna R. Cohrs, to secure the payment of $2500, evidenced by the note of Asa Bozarth, the husband, payable two years after date, with ten per cent interest, payable annually, and containing a clause that in default of the payment of the annual interest, the principal should become due. The mortgage was in the usual form, and contained a release of all homestead rights, and the wife acknowledged the release of all her rights of homestead, but the husband did not acknowledge the release of homestead, his acknowledgment being simply that he acknowledged the mortgage to be his free act and deed, for the uses and purposes therein set forth.

On March 27, 1873, Mary C. Maus, the assignee of said note and mortgage, filed her bill in the circuit court of Tazewell county, against the said Asa Bozarth and the plaintiffs, and others, for the foreclosure of said mortgage. Summons was duly served on all the defendants, and a guardian *ad litem*

was appointed for James, Ida B. and Mary Bozarth, (the plaintiffs,) they being then minors, who answered. At the May term, 1873, a decree was entered foreclosing said mortgage, and finding due thereon the sum of $2973.75, and a solicitor's fee of $125 provided for in the mortgage, and ordering a sale of the premises, etc. Sale was made under said decree July 12, 1873, to William Don Maus, for the sum of $3048.84. The sale was made *en masse,* the master having failed to obtain bids on the several tracts when separately offered. Certificate of purchase was made and recorded the same day.

At the May term, 1874, of the McLean circuit court, Albert Welch recovered a judgment against the said Asa Bozarth, John Bozarth and Elihu Bozarth, for $1250.50 and costs. Execution was issued to the sheriff of McLean county, and returned August 19, 1874, when Welch assigned the judgment to George W. Thompson. On the same day, an *alias* execution issued to the sheriff of Tazewell county, which came to that officer's hands August 20, 1874, and was levied on all the land sold under the foreclosure decree, and a certificate of levy was filed and recorded August 31, 1874. On October 10, 1874, a certificate of redemption from the sale under the decree of July 12, 1873, was executed by the sheriff of Tazewell county, and recorded on the same day. On October 31, 1874, the land was sold *en masse* by the sheriff to Welch for redemption money and costs. On January 14, 1875, after the term of office of the sheriff had expired, he made and delivered to Welch a deed for the premises, dating the same as of the day of sale. On the same day, Pratt, the then sheriff, also executed a deed to Welch for the lands on the same sale. Welch and wife, by their deed of December 1, 1875, conveyed the land to John Bozarth, and he, on May 22, 1882, conveyed the same to William Largent, defendant in error, who went into possession of the same.

Mr. B. S. Prettyman, for the plaintiffs in error:

Since the Married Woman's act of 1861, as respects the wife's separate estate, the husband stands before the law as a stranger. *Patten* v. *Patten,* 75 Ill. 451; *Tomlinson* v. *Matthews,* 98 id. 178.

The act of 1861 expressly provides that her property "shall be exempt from execution or attachment for the debts of her husband," not during coverture only, but without limit of time, or provision of exception in case of her death, or of her conveying it by mortgage with his concurrence, or of the vesting of the fee in her children through her death. It was to be exempt from execution or debts of the husband, as and for a like purpose as a homestead is exempt, against which curtesy can not prevail. *Loeb* v. *McMahon,* 89 Ill. 490.

A father devising property to his married daughter, and desiring that no part of it should be liable to the payment of the debts of the husband, such husband is excluded from any estate by curtesy therein; and property so devised is not liable for his debts on execution, even if the estate by curtesy had not been abolished. *Monroe* v. *Van Meter,* 100 Ill. 348.

But if the estate by curtesy does exist, in law, since 1861, in cases arising under that act, it is clearly so modified as to strip the husband of the use and control, during the marriage, of all of the wife's separate property, and make it exempt from seizure and sale under execution against him, or for his debts, not only during coverture, but after her death. The purpose of the law was to protect any honest provision, in real or personal property, which friends or relatives, from their means, might make for or give to the wife, to prevent her suffering for or to supply her with the necessaries of life, or to aid her in supporting and educating her children. For this purpose the law has made her separate property exempt from sale under execution for her husband's debts. For such purposes it is, and long has been, the policy of the law to exempt property from execution, as, of household goods to the head of the

family, liberal allowances to the widow, and by the provisions of the Homestead law. Thus restricted or "modified" by the act of 1861, the estate by curtesy, if not destroyed, had most, if not all, of its rights, powers and privileges then eliminated from it.

The wife and husband both waiving the homestead on the face of the mortgage, and the wife, but not the husband, waiving the homestead in the acknowledgment, is not a good waiver as to either.

This mortgage, as to the plaintiffs and their right of homestead, is void, (*Richards* v. *Greene*, 73 Ill. 54, *Best* v. *Gholson*, 89 id. 465, *Asher* v. *Mitchell*, 92 id. 490,) and its reception as evidence, against complainant's objection, for incompetence, was erroneous. Rev. Stat. 1874, chap. 41, secs. 1, 5.

Any person may redeem lands sold by a master or sheriff, and if the purchaser accepts the redemption money, the sale and certificate of purchase are rendered thenceforth void; and when land sold belonged in fee to a deceased person, by the redemption it is then and thereby vested in fee in the heirs of such person, at law. (*Turney* v. *Young*, 22 Ill. 255.) And if the levy and sale in this case, relied on by defendant, were designed to be made on an estate by curtesy in the land in question, as belonging to Asa Bozarth, it was then without such title in him, and was contrary to law as to any dower interest, because dower can not be levied on and sold legally until it is assigned. *Blain* v. *Harrison*, 11 Ill. 384.

After the assignment of the judgment the right to redeem was in the assignee.

Mr. WILLIAM DON MAUS, and Mr. T. N. GREEN, for the defendants in error:

The Married Woman's act of 1861 did not, by express terms or by implication, abrogate the estate of tenancy by the curtesy. *Cole* v. *Van Riper*, 44 Ill. 65; *Clark* v. *Thompson*, 47 id. 26; *Beach* v. *Miller*, 51 id. 209; *Noble* v. *McFarland*, 51 id.

226; *Armstrong* v. *Wilson,* 60 id. 226; *Monroe* v. *Van Meter,*
100 id. 348; *Lucas* v. *Lucas,* 103 id. 121.    And the contrary
view is not sustained by plaintiff's citation of *Rose* v. *Sander-
son,* 38 Ill. 248, *Farrell* v. *Patterson,* 43 id. 57, *Tomlinson* v.
*Matthews,* 98 id. 178, *Patten* v. *Patten,* 75 id. 447, and *Loeb*
v. *McMahon,* 89 id. 489.

The estate by the curtesy vested in real estate acquired by
the wife, after the act of 1861 became a law, at the death of
the wife.    *Monroe* v. *Van Meter,* 100 Ill. 348.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

At the common law, a husband held, in right of his wife, all
her lands in possession, and owned the rents and profits thereof
absolutely.    (1 Washburn on Real Prop. 276; Tiedeman on
Real Prop. sec. 90; *Haralson* v. *Bridges,* 14 Ill. 37; *Clapp* v.
*Inhabitants of Stoughton,* 10 Pick. 463; *Decker* v. *Livingston,*
15 Johns. 479.)    The birth of issue was not necessary to this
right of the husband, which continued during the joint lives
of the husband and wife.    It was called an estate during cov-
erture, or the husband's freehold estate *jure uxoris.*    (*Kibbie*
v. *Williams,* 58 Ill. 30; *Butterfield* v. *Beall,* 3 Ind. 203; *Mont-
gomery* v. *Tate,* 12 id. 615; *Croft* v. *Wilbar,* 7 Allen, 248.)
It differed from curtesy initiate, in its being a vested estate
in possession, while the latter is a contingent future estate,
dependent upon the birth of issue.    (*Wright's case,* 2 Md. 429.)
It is held in right of the wife, and was not added to or dimin-
ished when curtesy initiate arose.    Subject to the husband's
beneficial enjoyment during coverture, the ownership remained
in the wife, and on dissolution of the marriage was discharged
from such estate of the husband.    (Stewart on Husband and
Wife, sec. 146.)    Where there was marriage, seizin of the
wife and birth of issue capable of inheriting, the husband, by
the common law, took an estate in the wife's land during cov-
erture.    This was an estate of tenancy by the curtesy initiate,

and which would become consummate upon the death of the wife in the lifetime of the tenant. Upon the death of the wife, a tenant by the curtesy was seized of an estate of freehold, which was subject to alienation, and was liable to be taken on execution for his debts. Tiedeman on Real Prop. sec. 101; *Howey* v. *Goings*, 13 Ill. 95; *Jacobs* v. *Rice*, 33 id. 369; *Cole* v. *Van Riper*, 44 id. 58; *Beach* v. *Miller*, 51 id. 206; *Lang* v. *Hitchcock*, 99 id. 550.

The act of 1861, known as the Married Woman's act, provides: "That all the property, both real and personal, belonging to any married woman as her sole and separate property, or which any woman hereafter married owns at the time of her marriage, or which any married woman, during coverture, acquires in good faith from any person other than her husband, by descent, devise or otherwise, together with all the rents, issues, increase and profits thereof, shall, notwithstanding her marriage, be and remain, during coverture, her sole and separate property, under her sole control, and be held, owned, possessed and enjoyed by her the same as though she was sole and unmarried, and shall not be subject to the disposal, control or interference of her husband, and shall be exempt from execution or attachment for the debts of her husband."

In this case, Louisa Bozarth, who was the common source of title, was the owner of the land in controversy, as it is conceded, at the time of her marriage, August 19, 1863, to Asa Bozarth. The marriage having taken place after the act of 1861 took effect, and the wife being then the owner of the land in question, it was not, during her coverture, subject to the control, interference or disposal of her husband, or liable for his debts or other obligations. The effect of the statute was to abrogate the husband's estate in her lands, or the estate he would have had at common law during the coverture, and, consequently, during that period he had no estate therein liable to execution or attachment. The act did away with the estate he would have had at common law, growing out of the

marital relation, and it therefore follows, if the wife had been living at the time of the redemption and sale by the creditor of her husband, that proceeding would not have divested any right of herself or husband, or conferred any right upon the purchaser.

The question, however, remains, whether Asa Bozarth, the husband, on the death of his wife, in 1868, acquired an estate in her land as tenant by the curtesy. We have already seen that the property of a married woman, under the act of 1861, notwithstanding her marriage, was to be and remain, during coverture, her sole and separate property, and was not subject to the husband's control or liable for his debts. The general effect of statutes of this kind is to destroy the marital rights of the husband in his wife's estate; but a statute may exempt her property from his debts without in any way destroying his rights therein. Unless tenancy by the curtesy is destroyed by the statute by express words or necessary implication, or by the wife's disposition of her property, by virtue of her power over it, he will be held to have an estate by the curtesy at her death. The prevailing opinion seems to be, that while separate property acts do suspend, during coverture, all the rights of a husband, or his creditors, in statutory separate property, they do not destroy curtesy, or prevent its vesting on her death, unless such an event is clearly excluded by the statute,—as, where the statute not only provides that the property of the wife shall be hers, etc., but also defines her husband's interest therein, if she dies intestate, in which case curtesy is excluded. Where she has power to alienate or charge her property, she may thereby defeat curtesy, but the statute must contain express words to enable her to convey alone; and, also, when she has power of disposition of the property by will, she may thereby defeat curtesy. Stewart on Husband and Wife, secs. 243-161; *In the matter of Winne,* 2 Lans. (N. Y.) 21; *Hatfield* v. *Sneden,* 54 N. Y. 380; *Noble* v. *McFarland,* 51 Ill. 226; *Freeman* v. *Hartman,* 45 id. 57; *Cole* v. *Van Riper, supra.*

It will be seen that the Married Woman's act of 1861 does not attempt to define the husband's rights in his wife's property after her decease, nor does it give her any power of disposal of her separate property, independent of the husband. The purpose and effect of the statute were to secure to the wife the control of her separate property during coverture. During that period the husband's common law rights in her property are suspended. We are of opinion that this act did not have the effect of destroying the estate of curtesy, but that after the passage of that act, and prior to the passage of the act of 1874, the husband, on his wife's death, leaving issue of the marriage, took a life estate in her land as tenant by the curtesy. After the passage of the act under consideration, the estate by the curtesy in the lands of the wife did not vest in the husband until the death of the wife, (*Lucas* v. *Lucas*, 103 Ill. 121, *Beach* v. *Miller*, 51 id. 206,) but upon her death such estate became consummate, and vested in the husband in all respects as at common law. (*Noble* v. *McFarland*, 51 Ill. 226; *Shortall* v. *Hinckley*, 41 id. 219; *Gay* v. *Gay*, 123 id. 221; *Castner* v. *Walrod*, 83 id. 171.) It follows, that we are of opinion that upon the death of the wife in 1868, leaving issue surviving, the husband, Asa Bozarth, became seized of a freehold interest in the lands in controversy, as tenant by the curtesy, and which was subject to seizure and sale on execution against him.

The validity of the sale of the premises under the decree of foreclosure, and the redemption upon the execution issued upon the judgment in favor of Welch, and against the said Asa Bozarth, and the sale thereunder, is questioned by the plaintiffs in error. If the foreclosure sale was void for any cause, the judgment creditor redeeming therefrom acquired no title under his purchase, for the reason that his rights, like the purchaser at the sale under the decree of foreclosure, are dependent upon a valid judgment or decree, and sale. *Johnson* v. *Baker*, 38 Ill. 99; *Mulvey* v. *Carpenter*, 78 id. 580; *Keeling* v. *Head*, 3 Head. 592.

It is objected that there was no sufficient service of summons upon the plaintiffs in error, who were defendants in the foreclosure suit. The return to the summons therein is as follows: "Executed this writ by reading the same to the within named Asa Bozarth, James Bozarth, Ida Bell Bozarth and Mary Bozarth, and by delivering to each a true copy hereof on the 10th day of April, 1873," and properly signed by the sheriff. The process was returnable to the May term, 1873. The service was in apt time. The fact that the summons was read to the defendants did no harm, and that part of the return may be disregarded. It is apparent that the circuit court had, therefore, jurisdiction of the subject matter and of the parties, and mere errors or irregularities, if any, can not be taken advantage of in this collateral proceeding.

It is objected that the mortgaged premises were improperly sold *en masse.* If this be conceded, it would not render the sale void. At most, it would only be grounds for setting the sale aside, on proper application to the court in apt time. It, however, appears that the land was offered by the master in separate parcels, and receiving no bids therefor, it was then offered and sold *en masse.* We are not prepared to say that the action of the master was not warranted.

It is next objected that all the lands sold under the decree were redeemed *en masse,* and so sold to Welch under the execution. A judgment creditor's right of redemption is no greater or more extensive than that of the original debtor. He can not redeem in a case where the original owner can not redeem within the time allowed by law for redemption by the debtor. In *Hawkins* v. *Vineyard,* 14 Ill. 26, a quarter section of land had been sold, of which the debtor owned only sixty-five acres, and it was held that he could not redeem the sixty-five acres, but that he must redeem the whole or none. A person can not redeem an undivided share of land by paying his proportional share of the debt, and a part owner must redeem the whole. (*Durley* v. *Davis,* 69 Ill. 133.) A purchaser of a part of mort-

gaged land can not redeem that part by paying his proportion of the debt. (*Meacham* v. *Steele*, 93 Ill. 135.) When the purchaser at a master's sale of an entire tract of land afterwards assigns an undivided interest in such purchase, there can be no legal redemption of such undivided interest by a judgment creditor. *Groves* v. *Maghee*, 72 Ill. 526; *Titsworth* v. *Stout*, 49 id. 78.

Section 25, chapter 77, of the Revised Statutes, provides: "Any person entitled to redeem, may redeem the whole or any part of the premises sold, in like distinct parcels or quantities in which the same was sold," etc. If the several mortgaged tracts had been sold separately, redemption might have been made of any one or more of the tracts. In such case the amount that each tract sold for would furnish the basis for determining the amount to be paid in order to redeem; but as the several parcels of land were sold together, and for a gross sum, neither the debtor nor his judgment creditor could redeem without paying the full amount for which the same sold, with interest. The law gives the debtor twelve months in which to redeem, after which time any judgment creditor of the debtor may also redeem within fifteen months from the date of the sale; but in so doing, the creditor will possess no greater right than his debtor had within the time limited for redemption by him. After the expiration of twelve months from the sale, the right of redemption of the judgment debtor is gone. He no longer has any interest in the premises, and can not take advantage of mere irregularities in making redemption by his judgment creditor, and his acquisition of title by virtue of a sale in pursuance of such redemption. The purchaser at the foreclosure sale makes no objection to the validity of the redemption, and having accepted the money the redemption was complete. The title of Asa Bozarth being gone by his failure to redeem within the time allowed by law, he was not injured by a sale *en masse* on the execution, if, indeed, the sale could have been otherwise made.

There is no force in the objection that the redemption should have been made in the name of Thompson, assignee of Welch, the judgment creditor. (*Sweezy* v. *Chandler*, 11 Ill. 445.) It in no way concerns the plaintiffs in error whether redemption was made in the name of the plaintiff in the judgment against Asa Bozarth or in the name of his assignee.

No proof was made or offered at the trial tending to show that the premises, when sold under the decree of foreclosure, or when the mortgage was given, were occupied by the mortgagors, or either of them, as a homestead. Nor does it appear that they were at any time so occupied. Therefore, the question of the right of homestead was not presented for adjudication, and can not be considered in this court. It may, however, be observed, that the mortgage was executed and acknowledged before the act of 1872, relating to conveyances, took effect, and the cases cited by counsel were determined under the provisions of that act.

It is claimed that only the title of Louisa Bozarth passed by the sale under the decree of foreclosure, and therefore a creditor of her husband could not redeem from that sale. This contention is not well grounded. While the husband, as we have seen, at the time of the execution of the mortgage had no estate in the land, it was necessary to the execution of a valid mortgage, or conveyance of his wife's estate therein, that he should join in the mortgage or conveyance, which he did. The mortgage was in the usual form, and contained covenants of both the husband and wife, of good right to convey, seizin in fee, and of general warranty, and was sufficient to pass not only the estate of the wife, but also all the estate, right and interest of the husband in the property which he then had or might subsequently acquire. If he had no estate by the curtesy initiate, or otherwise, during the life of the wife, upon her death he took an estate for life in this land as tenant by the curtesy, which, under the covenants of the mortgage, inured to the benefit of the mortgagee. *Gochenour* v. *Mowry*, 33 Ill. 331.

The sheriff's deed was dated October 31, 1874,—the date of the sale upon the redemption,—but was in fact executed January 14, 1875, after the term of office of the sheriff had expired. Section 21 of the act relating to judgments, etc., provides, that the redeeming judgment creditor shall be considered as having bid at the sale the amount of the redemption money paid by him, with interest thereon, and the costs of the redemption and sale; "and if no greater amount is bid at such sale, the premises shall be struck off to such person making such redemption, and the officers shall forthwith execute a deed of the premises to him, and no other redemption shall be allowed." It is urged that the provision of the statute requiring the deed to be made "forthwith" is mandatory, and that a failure in this respect would render the sale void. We are not prepared to so hold. The purchaser is entitled to a deed forthwith in such case, but the failure of the sheriff to make the deed immediately after the sale will not render the redemption and sale invalid. This provision of the statute must be regarded as directory, only.

It is lastly objected, that Reeves, the sheriff, had no authority to make the deed after his term of office had expired. Section 30, of the act relating to judgments, etc., provides: "The deed shall be executed by the sheriff, master in chancery, or other officer who made such sale, or by his successor in office," etc. Freeman, in his work on Executions, (section 327,) says: "The officer who made the sale, whether he continues in office or not, is, in ordinary circumstances, and in the absence of statutory provisions to the contrary, the proper person to make a conveyance. * * * When the term of the officer who made the sale terminates, his power to make the conveyance continues. In fact, unless the new sheriff is specially authorized by statute, he seems to have no authority whatever to make a conveyance based on a sale made by his predecessor." We are of opinion that the deed made by the retiring sheriff, under our statute, was valid. If this is so, it will be unneces-

sary to determine whether the deed made by his successor in office is good or not. In any event, under the section of the statute quoted, by one deed or the other the title acquired under the redemption sale passed to the grantee in said deeds.

The plaintiffs claimed an estate in fee in the land in controversy, with a present right of possession. Their father having a life estate in the property, which has passed by virtue of the foreclosure sale, the redemption and sale thereunder, and the deeds in pursuance thereof to the defendant, they are not entitled to recover of the defendant the possession of said lands during the continuance of such estate. Until the termination of that life estate by the death of the life tenant, their right to a recovery must be postponed.

Some questions are raised as to the effect of the proceedings before mentioned, upon the fee to the land, which are not now before us for consideration, and no adjudication is made in respect thereof.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*