### Franklin O. McNeer

*v.*

### Valentine McNeer *et al.*

*Filed at·Springfield November 2, 1892.*

1. Husband—*his estate, at common law, in his wife's lands.* At common law, by virtue of the marriage alone, and without the birth of issue, the husband was seized of an estate during coverture in the lands held by his wife in fee. He was said to be seized of the freehold *jure uxoris,* and took the rents and profits during the joint lives of himself and wife. This estate terminated on the death·of either the husband or the wife.

2. A husband's marital estate, at common law, in his wife's land was such as might be sold on execution against him. It was a vested estate in him, and it was not competent for legislation, without his consent, to take it from him and give it back to his wife.

3. A husband's estate *jure uxoris* in his wife's real estate, at common law, on the birth of issue capable of inheriting, is changed in its character, and he becomes tenant by the curtesy initiate, and, as such, entitled to an estate in his wife's lands in his own right and for his own life.

4. Same—*effect of Married Woman's act of 1861.* Since the Married Woman's act of 1861, the husband has not had such an interest in his wife's land by the curtesy initiate as to amount to a vested interest. His interest is contingent until the death of his wife, and before her death a law cutting off the estate by the curtesy is valid, and defeats the husband's estate or interest, whatever it may be.

5. The Married Woman's act of 1861 had the effect of abolishing the estate known as the estate during coverture or tenancy by the marital right, but it did not destroy the estate of tenancy by the curtesy initiate. That estate, however, was materially modified by the act. Under the act the husband, as tenant by the curtesy, had no control over his wife's lands. His interest as such tenant could not be conveyed by him, nor was it subject to execution. His estate became consummate only on the death of his wife seized of the property. It was liable to be defeated by her disposition by will.

6. Estate by the curtesy—*its requisites and qualities.* Four things, at the common law, are requisite to an estate by the curtesy: lawful marriage, actual seizin of the wife, issue capable of inheriting, and death of the wife. The first three constitute tenancy by the curtesy initiate; on the death of the wife it became consummate. The estate by the

curtesy initiate could be sold under execution against the husband. It is a vested estate, of which the holder can not be deprived by subsequent legislation.

7. VESTED RIGHTS—*what constitute—not destroyed by legislation.* An interest in property which can be seized on execution, and sold by creditors in payment of their debts, is such a vested interest as the fundamental law will protect from destruction by retroactive legislation.

8. SAME—*not a mere expectation of property.* It is well settled that a mere expectation of property in the future is not a vested right, and may be changed, modified or abolished by legislative action.

9. DOWER—*not a vested interest before the death of husband or wife.* The right of dower, to which a married woman is entitled in her husband's real estate before his death, is not a vested interest, and may be changed by the legislature at any time before the death of the husband. The same rule applies to the husband's dower in his wife's land. The case of *Russell* v. *Rumsey*, 35 Ill. 362, in so far as it holds otherwise, is overruled or not followed.

10. SAME—*husband's dower.* A woman, in 1858, became seized in fee of land. In 1868 she married, and in 1870 a child was born of the marriage, and she died in 1878: *Held,* that her husband had no estate by the curtesy, but had the right only to dower in the wife's lands.

WRIT OF ERROR to the Circuit Court of Vermilion county; the Hon. EDWARD P. VAIL, Judge, presiding.

Mr. D. D. EVANS, for the plaintiff in error:

During the life of the husband the right of dower is a mere expectancy or possibility. In that condition the law-making power may deal with it as may be deemed proper. *Randall* v. *Kreiger*, 13 Wall. 148; *Strong* v. *Clem*, 12 Ind. 37; *Sewall* v. *Lee*, 9 Mass. 367; *Reynolds* v. *Reynolds*, 24 Wend. 197; *Moore* v. *Mayor*, 8 N. Y. 110; *Witthaus* v. *Schack*, 105 id. 336; *Weaver* v. *Gregg*, 6 Ohio St. 547; *Barbour* v. *Barbour*, 40 Me. 9; *Noel* v. *Ewing*, 7 Ind. 37; *Lucas* v. *Sawyer*, 17 Iowa, 517.; *Blain* v. *Harrison*, 11 Ill. 385; *Henson* v. *Moore*, 104 id. 409; *Cool* v. *Jackson*, 13 Bradw. 563; Cooley's Const. Lim. 359.

The estate of a husband in his wife's lands, acquired by him since the Married Woman's act of 1861, is not a vested estate, and it was competent for the legislature, during the

wife's life, to abolish or change that estate. *Beach* v. *Miller*, 51 Ill. 209; *Lucas* v. *Lucas*, 103 id. 125; *Bozarth* v. *Largent*, 128 id. 105; *In re Tuller*, 79 id. 99.

The courts of other States have held that curtesy initiate can be changed or destroyed by the legislature. *Hathorn* v. *Lyon*, 2 Mich. 93; *Tong* v. *Marvin*, 15 id. 73; *Thurber* v. *Townsend*, 22 N. Y. 517; *Allen* v. *Hanks*, 136 U. S. 309; *Alexander* v. *Alexander*, 1 L. R. 125.

Again, curtesy initiate, since the act of 1861, is an inchoate right. In this State, curtesy was given by statute. Rev. Stat. 1845, sec. 1, chap. 62.

But inchoate rights, generally, derived by virtue of a statute, are lost by a repeal of the statute, unless saved by express words in the repealing act. *Moore* v. *Seaton*, 31 Ind. 11; *Dillon* v. *Linder*, 36 Wis. 344; *Randall* v. *Kreiger*, 23 Wall. 148.

Is there any real difference between repealing an act and abolishing a right created by an act?

Again, curtesy is considered to be a continuance of the inheritance. When the estate becomes consummate by the death of the wife, the tenant by the curtesy takes by inheritance, and not by purchase. 1 Washburn on Real Prop. 140, 141, 142; *Watson* v. *Watson*, 13 Conn. 84; 4 Am. and Eng. Ency. of Law, 963.

Mr. E. R. E. KIMBROUGH, for the defendants in error:

Did the husband take an estate by the curtesy in the lands owned by the wife in fee, prior to 1874, and at the time of her death? The Married Woman's act of 1861 did not destroy the estate by the curtesy. *Cole* v. *Van Riper*, 44 Ill. 58; *Beach* v. *Miller*, 51 id. 206; *Armstrong* v. *Wilson*, 60 id. 227; *Bozarth* v. *Largent*, 128 id. 102.

From the *dicta* in *Beach* v. *Miller*, 51 Ill. 209, and in *Martin* v. *Robson*, 65 id. 132, and the decision in *Lucas* v. *Lucas*, 103 id. 125, it would seem that the husband's right to an estate by the curtesy, under the act of 1861, was a contingent

estate until it became vested by the death of his wife during his lifetime.

From the authorities above quoted it appears to me, that by the marriage of Valentine McNeer to Sarah J. Conrad, in 1868, he became invested with the right to take an estate by the curtesy in the lands with which his wife was then seized, such right depending upon two contingencies:—First, the birth of issue, born alive, capable of inheriting from the mother; and second, the death of the wife during the lifetime of the husband. Both of these contingencies happened. The wife died intestate, seized of the lands owned by her at the time of the marriage, and leaving children who were born of the marriage prior to 1874.

The right of a *feme covert* to dower is a vested interest. *Russell* v. *Rumsey,* 35 Ill. 372; *Steele* v. *Gellatly,* 41 id. 44; *Freeman* v. *Hartman,* 45 id. 59; *Monroe* v. *Van Meter,* 100 id. 352.

The estate became initiate after there was marriage, seizin and birth of issue. All these requirements existed in favor of Valentine McNeer before the abolition of the estate. The effect of the act of 1861, it has been held by this court, was only to suspend the husband's common law rights in the wife's property. It did not abolish his right. At common law an estate by the curtesy initiate was a vested right. A vested right is not subject to legislative control. *Rose* v. *Sanderson,* 38 Ill. 247.

Mr. Justice Magruder delivered the opinion of the Court:

This is an agreed case, made by the parties to a partition suit in chancery in the Circuit Court of Vermilion County, and filed in that court, and certified to this Court, together with the decision of the Circuit Court thereon, by the clerk of said Circuit Court under section 74 of the Practice Act. The Circuit Court granted the relief asked for by the complainants in the original bill as finally amended, and sustained a

demurrer to the cross-bill filed by the defendants below and dismissed said cross-bill. The facts, as agreed to, are that Valentine McNeer, one of the defendants in error, is the surviving husband of Sarah A. McNeer, deceased; that in 1858 the said Sarah became seized in fee of the lands in controversy located in said county; that in 1868 she intermarried with the said Valentine; that in 1870 Franklin O. McNeer, one of the defendants below and one of the plaintiffs in error here, was born to the said Sarah and Valentine, the issue of their said marriage; that in 1878 the said Sarah died seized of said lands, and leaving her surviving the said Valentine, her husband, and the said Franklin O. and others, her children and heirs at law. It being agreed, that there was seizin in fee in the wife in 1858, marriage in 1868, birth of issue capable of inheriting in 1870, and death of the wife in 1878, the question presented for decision is this: Is the surviving husband entitled to an estate by the curtesy in the real estate of which his wife died seized in fee, or is he limited to dower therein under and by virtue of the statute relative to dower in force since 1874? By the decree of the Circuit Court an estate by the curtesy in said lands was declared in favor of Valentine McNeer, and it was ordered that he should have, during his life, the use, issues, rents and profits of said lands, free from the interference of any of the heirs at law of his deceased wife, Sarah, etc. The errors assigned question the correctness of this decree.

Section 1 of the Dower Act, which went into force on July 1, 1874, provides, "that the estate of curtesy is hereby abolished, and the surviving husband or wife shall be endowed of the third part of all the lands whereof the deceased husband or wife was seized of an estate of inheritance, unless the same shall have been relinquished in legal form." (1 Starr & Cur. Ann. Stat. page 896). Mrs. McNeer was alive when this Act went into force, her death not having occurred until four years thereafter. If, when the Act became a law, Valentine McNeer

had had an estate of tenancy by the curtesy initiate, the Act would not have had the effect of depriving him of that estate, and reducing it to an estate of dower, as defined in said section above quoted.

At common law, by virtue of the marriage alone, and without the birth of issue, the husband was seized of an estate, during coverture, in the lands held by his wife in fee. He is said to have been seized of the freehold *jure uxoris.* He took the rents and profits during the joint lives of himself and his wife. This estate was ended by the death of the wife or the death of the husband. It applies to land, in which the wife was seized of an estate of inheritance either at the time of the marriage, or after the marriage. "It is a freehold estate in the husband, since it must continue during their joint lives, and it may by possibility last during his life." It has sometimes been called a "tenancy by the marital right." It was liable to be sold on execution against the husband. (2 Kent's Com. 130; 1 Bish. on Law of Mar. Women, 529, 531; *Cole* v. *Van Riper,* 44 Ill. 58; *Bozarth* v. *Largent,* 128 Ill. 95). "This is a vested estate in him; and * * * it is not competent for legislation, without his consent, to take it from him and give it back to the wife." (2 Bish. on Law of Mar. Wom. sec. 40; *Rose* v. *Sanderson,* 38 Ill. 247; *Kibbie* v. *Williams,* 58 id. 30).

But the estate during coverture, or tenancy by the marital right, is quite different from tenancy by the curtesy, particularly in the fact that the former does not continue after the wife's death. As soon as issue was born, the estate of the husband was changed in its character. By the birth of issue he became tenant by the curtesy initiate, and as such was entitled to an estate in his wife's lands in his own right and for his own life. This estate became consummate upon the death of the wife. Four things are requisite to an estate by the curtesy: lawful marriage, actual seizin of the wife, issue capable of inheriting, and death of the wife. The first three

without the last constitute tenancy by the curtesy initiate. The husband's estate is initiate on issue had, and consummate on the death of the wife. (4 Kent's Com. pages 28-30; *Cole* v. *Van Riper,* 44 Ill. 58; *Bozarth* v. *Largent, supra*). The estate of tenancy by the curtesy initiate could be seized and sold on execution against the husband. (*Cole* v. *Van Riper, supra*).

The weight of authority is in favor of the position, that the estate of tenancy by the curtesy initiate, as it existed under the common law, and before it was qualified by the modern statutes enlarging the rights of married women, was a vested estate, and could not be destroyed by legislation which took effect after it came into existence. We are aware, that there are some authorities which hold to the contrary; but we think that they fail to distinguish between the estate as it existed before the passage of what are known as the "married woman's Acts," and as it came to be after the passage of those Acts. It will also be found upon examination, that many of the cases cited in support of the position that the right of curtesy initiate is not a vested right, do not go as far in that direction as they are claimed to go, either because they are based upon the language of particular statutes, or because their facts do not squarely present the question. It can not be, that an interest in property which can be seized on execution and sold by creditors in payment of their debts, is not such a vested interest as the fundamental law will protect from destruction by retroactive legislation. (*Shortall* v. *Hinckley,* 31 Ill. 219; *Jacobs* v. *Rice,* 33 id. 369; *Lang* v. *Hitchcock,* 99 id. 550; *Gay* v. *Gay,* 123 id. 221.)

In *Shortall* v. *Hinckley, supra,* where seizin of the wife, marriage and birth of issue had all occurred before the passage of the Act of 1861 hereinafter referred to, we said: "At the death of Hiram Gilson, all these sisters were married, and had children then living, the issue of their several marriages. Their husbands thereby became invested with, or entitled to,

a life estate in their wives' share of this property by the curtesy initiate.  \*  \*  \*   This interest of the husband in his wife's property is a vested legal estate subject to sale on execution, or by himself. He could have leased it to the extent of the whole or any portion of the term.  \*  \*  \*   The estate of the husband is carved out of and is a distinct estate from hers. He holds it as if he had acquired it by deed, and it is liable to all the incidents of any other freehold or life estate, until it is again merged into the fee simple. If he were to convey or lease it, the title of the grantee or lessee could not be defeated by the husband and wife joining in a subsequent conveyance.  \*  \*  \*   Until the death of the husband, his grantee would be entitled to hold the premises," etc. In *Rose* v. *Sanderson, supra,* it was held, that both the husband's estate during coverture and his estate as tenant by the curtesy initiate were such vested interests, that the Legislature could not take them from the husband and give them to the wife. (*Clark* v. *Thompson,* 47 Ill. 25; *Noble* v. *McFarland,* 51 Ill. 226; *Henson* v. *Moore,* 104 id. 403). Cooley in his work on Constitutional Limitations (6th Ed. page 440), in speaking of the vested rights, which the husband had at common law, says: "He could have a right as tenant by the curtesy initiate in the wife's estates of inheritance the moment a child was born of the marriage, who might by possibility become heir to such estates. This right would be property, subject to conveyance and to be taken for debts; and must therefore be regarded as a vested right, no more subject to legislative interference than other expectant interests which have ceased to be mere contingencies and become fixed. But while this interest remains in expectancy merely — that is to say, until it becomes initiate — the legislature may have full power to modify or even abolish it." (*Wyatt* v. *Smith,* 25 W. Va. 813). Although Bishop in his work on the Law of Married Women presents one view of the husband's initiate right of curtesy, which would lead to the conclusion that it could be cut off by

legislation at any time before it became consummate by the death of the wife, yet he presents another view which he holds to be the better one; and "it is that, by the birth of a child, the estate by the marital right is extended in duration to become an estate, not for the mere joint lives of himself and wife, but for his own life; and that it is this enlarged estate, not the mere possibility, which is termed tenancy by the curtesy initiate. In this view the husband's rights can not constitutionally be taken away after a child is born." (2 Bish. on Law of Mar. Wom. sec. 43). He gives the following as the conclusion to be derived from an examination of the authorities, namely: "curtesy initiate is an estate vested in the husband, and * * * consequently it cannot be taken from him and given to the wife by a mere statute."

When, however, the Act of 1874 went into effect, Valentine McNeer did not have an estate of tenancy by the curtesy initiate as it existed at the common law, but as it existed under an Act of the Legislature of this State, approved February 21, 1861, and in force April 24, 1861, entitled, an "Act to protect married women in their separate property." As his marriage did not take place until 1868, and the issue thereof was not born until 1870, he acquired his interest in his wife's property while the Act of 1861 was in force and subject to its provisions. That Act provides, "that all the property, both real and personal, belonging to any married woman, as her sole and separate property, or which any woman hereafter married owns at the time of her marriage, or which any married woman, during coverture, acquires in good faith from any person other than her husband by descent, devise or otherwise, together with all the rents, issues, increase and profits thereof, shall, notwithstanding her marriage, be and remain, during coverture, her sole and separate property, under her sole control, and be held, owned, possessed and enjoyed by her the same as though she was sole and unmarried; and shall not be subject to the disposal, control or interference of

her husband, and shall be exempt from execution or attachment for the debts of her husband."

The Act of 1861 did not destroy the estate of tenancy by the curtesy initiate. (*Cole* v. *Van Riper, supra; Freeman* v. *Hartman,* 45 Ill. 57; *Armstrong* v. *Wilson,* 60 id. 226). But the estate was materially modified and changed by that Act. The estate known as the estate during coverture, or "tenancy by the marital right," was thereby substantially abolished. (*Cole* v. *Van Riper, supra*). Under the Act, the husband as tenant by the curtesy initiate had no control over his wife's lands. His interest as such tenant could not be conveyed by him, nor was it subject to execution. If the wife died seized of her lands, he was entitled to hold them as tenant by the curtesy. His estate became consummate upon her death, if she had not disposed of her real estate during her life. So long as she lived, however, his interest in her land lacked those elements of property, such as the power of disposition and liability to sale on execution, which had formerly given it the character of a vested estate. Under the Act the wife could dispose of her separate estate by will. (*In re Tuller,* 79 Ill. 99). She could not, however, convey her lands without the consent of her husband, manifested by joining in the deed. (*Cole* v. *Van Riper, supra*).

In speaking of the estate of tenancy by the curtesy as affected by the Act of 1861, we said, in *Cole* v. *Van Riper, supra:* "It is during coverture that the property of the wife is clothed with these new qualities, leaving the existing law unchanged, as to the disposition of the wife's property at her death;" in *Beach* v. *Miller,* 51 Ill. 206: "The husband's right to the curtesy is contingent, and until it vests he has no present interest in the land. It does not vest in the husband until the death of the wife;" in *Martin* v. *Robson,* 65 Ill. 129: "He (the husband) has now only a modified tenancy by the curtesy, dependent upon a contingency, and no estate vests during the life of the wife. This is rather a shadowy estate. It

is an interest which may possibly ripen into something tangible in the uncertain future. * * * This estate, at best, is now a bare possibility;" in *Lucas* v. *Lucas,* 103 Ill. 121: "Since the Act of 1861, the husband's right to the curtesy in the land of his wife is contingent, and does not vest in the husband until the death of the wife;" in *Bozarth* v. *Largent, supra:* "After the passage of the Act (of 1861) * * * the estate by the curtesy in the lands of the wife did not vest in the husband until the death of the wife."

It is thus manifest, that the estate of tenancy by the curtesy initiate, as changed and modified by the Act of 1861, was very much such an interest as dower; except that the life estate of the husband after the death of the wife was in the whole of the land, instead of attaching to only one-third of it. The estate by curtesy was like dower, in that it could not be aliened separately from the fee, nor by a deed in which the wife did not join. It was like dower in that it was not subject to execution. It was like dower in that, before the death of the holder of the principal estate, it was a contingency, an expectancy, a possibility.

It is well settled, that a mere expectation of property in the future is not a vested right, and may be changed, modified, or abolished by legislative action. (Cooley's Cons. Lim.— 6 Ed.,—pages 438 to 440; *Richardson* v. *Akin,* 87 Ill. 138; *Weidenger* v. *Spruance,* 101 id. 278).

It is not denied, that the Act of 1861 had the effect of so changing and modifying the estate of tenancy by the curtesy initiate as to assimilate that estate in its essential features to the ordinary right of dower. But it is said, that this Court has held the inchoate right of dower to be a vested interest in land which the legislature had no power to change by a retrospective enactment. It is true, that such a decision was made by this Court in *Russell* v. *Rumsey,* 35 Ill. 362, and referred to without disapproval in *Rose* v. *Sanderson,* 38 Ill. 247, and *Steele* v. *Gellatly,* 41 id. 39. But in other cases this Court

has expressed views, which are either directly or impliedly opposed to the decision in the Russell case.

In *Blain* v. *Harrison*, 11 Ill. 384, we said : "The right of dower in a married woman is a mere intangible, inchoate, contingent expectancy, and even in a widow, until it is assigned, it is no estate in the land, but it is a right resting in action only, and it cannot be aliened." In *Hoots* v. *Graham*, 23 Ill. 81, we said of dower: "It is a personal right that lies only in action and not in grant before it is assigned. * * * The situation of a doweress after the death of her husband and before assignment is very peculiar. Although by that event the *title of dower* becomes consummated, the title of entry does not accrue until the ministerial act of assigning to her a third part in certainty has been performed by the proper persons." In *Robbins* v. *Kinzie*, 45 Ill. 354, it was said, that the inchoate right of dower is not a present interest or estate in lands. The doctrine of *Blain* v. *Harrison, supra,* was reaffirmed in Johnson v. *Montgomery*, 51 Ill. 185, and *Best* v. *Jenks*, 123 id. 447. In *Henson* v. *Moore*, 104 Ill. 403, the inchoate right of dower was said to be a mere expectancy, and, therefore, not a vested interest, and the opinion in that case uses the following language: "The right of dower, which a wife may have in the estate of the husband before his death, is one which may be changed in such manner as the legislature may think for the best interests of the people. It may be entirely abolished or it may be changed." In the more recent case of *Goodkind* v. *Bartlett*, 136 Ill. 18, we have said: "An estate of dower is a freehold estate, but a right of dower in a married woman before it has become consummate by the death of her husband, is a mere intangible, inchoate and contingent expectancy, and not only is not an estate in land, but does not even rise to the dignity of a vested right."

In view of the conflict which thus seems to exist (*Cool* v. *Jackman*, 13 Brad. 560) between the *Russell* case and the other cases above referred to, we are inclined to adopt the

later utterances of the Court as the law upon this subject, and to hold that the right of dower, to which a married woman is entitled in her husband's real estate before his death, is not a vested interest, and may be changed by the legislature at any time before the death of the husband. Of course the same rule applies to the husband's right of dower in his wife's real estate under the law as it now stands. This view is in harmony with the decisions of the Federal Supreme Court, and of many of the States, and with the conclusions of most of the text writers. Bishop on Law of Married Women (Vol. 2, sec. 42) says: "The wife's contingent right to dower in her husband's lands, should she survive him, is a valuable interest, but it is not a vested one. It is a contingency of which indeed the husband cannot at the common law bar her by his own act; yet being a contingency, and not a vested thing, a statute may constitutionally take it from her." (Cooley's Cons. Lim.— 6 Ed.—page 441; 5 Am. & Eng. Enc. of Law, page 904; Stewart's Husband and Wife, sec. 262; *Melizet's Appeal*, 17 Pa. St. 449; 55 Am. Dec. 573; *Noel* v. *Ewing*, 9 Ind. 37; *Lucas* v. *Sawyer*, 17 Iowa, 517; *Barbour* v. *Barbour*, 46 Me. 9; *Magee* v. *Young*, 40 Miss. 164; *Moore* v. *The Mayor*, 8 N. Y. 110; *Reynolds* v. *Reynolds*, 24 Wend. 193; *Sewall* v. *Lee*, 9 Mass. 363; *Strong* v. *Clem*, 12 Ind. 37; *Weaver* v. *Grey*, 6 Ohio St. 547; *Randall* v. *Kreiger*, 23 Wallace, 148).

In the case of *Randall* v. *Kreiger, supra,* the Supreme Court of the United States say: "During the life of the husband the right (of dower) is a mere expectancy or possibility. In that condition of things the law making power may deal with it as may be deemed proper. It is not a natural right. It is wholly given by law, and the power that gave it may increase, diminish or otherwise alter it, or wholly take it away. * * * Upon the death of the husband * * * the rights of the widow * * * become fixed and vested."

When the act of 1874 went into force, Valentine McNeer's interest as tenant by the curtesy initiate had not become consummate by the death of his wife. Therefore, inasmuch as that interest had been acquired under the Act of 1861 and had been so changed and modified by the latter Act as to be stripped of the essential elements of a vested estate and had been reduced in character to the condition of the ordinary inchoate right of dower, except that it applied to the whole of Mrs. McNeer's lands instead of one-third thereof, it follows that such interest was abolished by the Act of 1874. Under the latter Act, he became entitled to an inchoate right of dower in his wife's lands; and this right became consummate upon her death in 1878. Hence, we are of the opinion that the court below erred in granting the relief asked for in the original bill, and in sustaining the demurrer to the cross-bill, and dismissing the same, and thereby declaring an estate by the curtesy in favor of the defendant in error, Valentine McNeer.

The decree of the Circuit Court is reversed, and the cause is remanded to that Court for further proceedings in accordance with the views herein expressed.

*Decree reversed.*