Shortall *v.* Hinckley et al.

# JOHN G. SHORTALL

*v.*

# SAMUEL T. HINCKLEY, AND CHARLES R. STARKWEATHER.

1. LIMITATIONS — *tenant by the curtesy.* The title of a tenant by the *curtesy* may be barred by limitation.

2. STATUTE OF LIMITATIONS — *continues to run.* Should the statute of limitations commence to run against such title, while being held by the husband, the subsequent conveyance of the land to which the title attached, by husband and wife, will not arrest the running of the statute, as against their grantee.

3. ESTATE BY THE CURTESY — *its incidents and character.* The interest of a tenant by the *curtesy* is a vested legal estate, distinct from that of the wife, and is liable to all the incidents of any other freehold or life estate ; it is subject to sale under execution, or by himself, or he may lease it to the extent of the whole, or any part of the term.

4. GRANTEE OR LESSEE OF TENANT BY THE CURTESY — *his rights as against subsequent grantee of husband and wife.* And if he were to convey or lease his interest, the title of the grantee or lessee would not be defeated by a subsequent conveyance of the whole estate by the husband and wife ; such subsequent conveyance would only pass the wife's remainder.

5. Nor can the grantee who thus has title only to the wife's remainder, maintain ejectment against the original grantee or lessee of the tenant by the *curtesy,* during the lifetime of the latter.

6. ESTATE BY THE CURTESY BARRED — *defeats ejectment during husband's lifetime.* So, as in this case, if a grantee of husband and wife, of the wife's lands, bring ejectment during the husband's lifetime, against one in adverse possession, and it appear that the husband's right as tenant by the *curtesy,* is barred by the statute of limitations, the whole action will be defeated.

7. AFTER DEATH OF HUSBAND, THE FEE RECOVERABLE. But, no doubt, after the death of the husband, the life estate having expired, such grantee may recover the fee which was in the wife, that not being barred.

8. ESTATE BY THE CURTESY — *may be conveyed by husband alone.* The husband may convey his interest, as tenant by the *curtesy,* without his wife joining in the conveyance.

9. PARTIES — *in suits relating to estate by the curtesy.* Nor need she join with her husband in a suit to recover his possession, or for damages sustained by trespass.

10. STATUTE OF LIMITATIONS — *effect of conveying land in adverse possession.* The conveyance of land while in the adverse possession of another, although it is valid under our statute for the purpose of passing all the rights of the grantor, does not operate to arrest the running of the statute of limitations which had, prior to the conveyance, commenced to run against the grantor.

11. CONVEYANCE OF LAND IN ADVERSE POSSESSION—*character of right which passes thereby.* The effect of a conveyance of land by one out of possession, the same being in the adverse possession of another, under the provisions of the fourth section of our conveyance act, is simply to invest the grantee with all the rights of the grantor precisely as he then held them.

WRIT OF ERROR to the Superior Court of Chicago.

This was an action of ejectment instituted by Shortall against Hinckley, on the twenty-second day of February, A. D. 1861. The declaration contained three counts.

*First count.* For an undivided three-sixths, in fee simple, of a certain part of lot number fifteen, in block number one hundred and thirty-eight, in the School Section Addition to the city of Chicago.

*Second count.* For another undivided two-sixths, in fee simple, of the same parcel.

*Third count.* For a life estate for the life of Hibbard Porter in one other undivided one-sixth of the same parcel.

Plea of the general issue by Hinckley, and issue thereon.

Subsequently, Starkweather, landlord of Hinckley, his tenant in possession, was admitted as a co-defendant.

It appeared from the evidence on the part of the plaintiff below, (who is also the plaintiff in error) that Hiram Gilson, holding the title in fee simple to the premises in question, died intestate, in the year 1844, leaving as his only heirs, his mother, Mehitabel Gilson; his sister, Harriet W. Reed, wife of Charles M. Reed; his sister, Caroline McAlister, wife of David McAlister; his brother, W. P. Gilson, and his sister, Phila D. Porter, wife of Hibbard Porter. All of these sisters had children living, the issue of their several marriages. In the year 1852, Phila D. Porter died, leaving children surviving her. On the 31st of March, 1856, Mehitabel Gilson, W. P. Gilson and wife, Charles M. Reed and wife, and David McAlister and wife, conveyed all their interest in the property in question, to Hibbard Porter; and on the 4th of June, 1860, Hibbard Porter conveyed the same, together with his own interest as tenant by the *curtesy* in the one-sixth inherited by his wife, to Shortall, the plaintiff.

On the part of the defendant it was established that at the commencement of the suit, Hinckley was in possession of the premises as the tenant of Starkweather, and that Starkweather had been in the actual possession thereof, through his tenants, under claim and color of title, made in good faith, for seven successive years prior to the commencement of the suit, and continued in such possession, and also, during all that time, beginning with the year 1850, had paid all taxes legally assessed on the premises.

The issue was found for the defendants; and thereupon the plaintiff entered his motion for a new trial, upon the ground that the finding was contrary to the law and the evidence. Which motion was denied by the court, and the plaintiff excepted.

Judgment was entered for the defendants.

It is assigned for error, 1st, that the finding upon the issue was against law and evidence; 2nd, that the court erred in overruling the plaintiff's motion for a new trial; and 3rd, in rendering a judgment in favor of the defendants, when it should have been for the plaintiff.

Mr. JOHN BORDEN, for plaintiff in error.

The decision of the case involves a rule of property arising out of a proper construction of the limitation law.

The interests sued for in the first and third counts are barred under section eight, unless saved by section four of the conveyance act. Rev. Stat. 1845, 103, 104; Scates' Comp. 959, 750. The grantors of Hibbard Porter had their respective estates still vested in them and unbarred, at the date of their deed to him, the seven years not having yet elapsed.

The interests of Mehitabel Gilson and W. P. Gilson would have been barred in another year, had the deed not been made; but Hibbard Porter, or his grantee, was not bound to sue within such remaining year to avoid the bar.

Under the fourth section before cited, the grantee of a party out of possession, does not merely acquire the right of the grantor to sue, but that right is so far extended that the

grantee has the same right of action as if the grantor had been in the actual possession at the time of executing the conveyance; the grantee has seven years after the execution of the deed to him, in which to sue.

The position contended for, on the part of the plaintiff, as to the two-sixths interest sued for in the second count, is, that at the date of the deed of McAlister and wife and Reed and wife, the husbands had each a life estate for their own lives vested in them as tenants by the curtesy initiate; that their wives had a reversionary interest in fee therein, as to one-sixth each. That on March 31, 1856, when they conveyed to Hibbard Porter, the life estates of the husbands were merged in the fee of their wives, and Porter acquired a present interest of a fee in the two-sixths; that the reversionary interests of the wives becoming, by the merger, present interests, the cause of action thereon then first accrued, and Porter or his grantee had seven years from March 31, 1856, to bring his action for the two-sixths, which period had not elapsed in this case, suit having been brought February 22, 1861. The case of *Foster v. Marshall*, 2 Foster (N. H.) 491, shows this to be the law. See also *Marple* v. *Myers*, 12 Penn. State R. 2 Jones, 122.

In the next place, McAlister and Reed were both tenants by the curtesy initiate before 1850, when the statute of limitations began to run. And this is a vested estate for the life of the husband; for if the sheriff levies on the husband's interest in the wife's land after issue born, he levies upon a life estate for the life of the husband. *Mattocks* v. *Stearns*, 9 Vermont, 326; *Day et al.* v. *Cochran*, 24 Miss. 261.

And the wife's estate in such case being reversionary, she has the full period given by the statute after the death of her husband, it being a new accruer, and her right in such case is not saved to her by the disability clause. *Foster* v. *Marshall*, 2 Foster (N. H.) R. 491; *Jackson* v. *Johnson*, 5 Cowen, 74; *Jackson* v. *Schoonmaker*, 4 Johns. 390; *Jackson* v. *Sellich*, Johns. 202.

Section eight of the conveyance act is an act of limitation, *Newland* v. *Marsh*, 19 Ill. 376,) and is to be governed by the

principles applicable to limitation laws. The several statutes of limitation being all in *pari materia*, ought to receive an uniform construction, notwithstanding any slight variation of phrase, the object and intention being the same. *Murray* v. *The East India Company*, 5 Barn. & Ald. 204.

The doctrine in this State is, that the operation of the statute of limitations is to bar the title, and not to transfer it. *Hinchman* v. *Whetstone*, 23 Ill. 185.

Messrs. HOYNE, MILLER & LEWIS, for the defendants in error.

1. The plaintiff cannot recover upon the first count, for the estates of Mehitabel, the mother, and W. P. Gilson, comprising three-sixths, are barred under the eighth section above cited, neither of these parties being within any of the saving clauses of the statute.

2. He cannot recover upon the third count, for the reason that the particular estate of Hibbard Porter is also barred by the statute.

3. Neither can he recover upon the second count for the two-sixths inherited by the two sisters, Harriet W. Reed and Caroline E. McAlister. They having issue living, each of their husbands became entitled to a freehold or an estate for his own life, as tenant by the curtesy initiate, in that portion inherited by his wife, and this particular estate of the husband, with the remainder to his wife in fee, constituted the entire estate in fee, which is claimed in this count. This estate of the husband was a legal estate; it could have been conveyed by him. It was in every sense *his land*, and liable to respond to his debts. 2 Kent Com. 130; *Lessee of Thompson's Heirs* v. *Green*, 4 Ohio State R. 223; *Schermerhorn* v. *Muller*, 2 Cow. R. 439; *Foster* v. *Marshall*, 2 Foster (N. H.) 492.

In respect to each of the one-sixth portions claimed in this count, the adverse title was held by the husband and the wife, and the two estates together, the freehold of the husband with the remainder to the wife held by one and the same title, constituted the fee simple estate which is claimed by the plaintiff.

The estate in remainder will not take effect until the determination of the particular estate, and this will not be determined until the death of the husband.

4. The action of ejectment is a possessory action, and cannot prevail unless the plaintiff has the right to the possession at the time it. is instituted. In this case the plaintiff cannot have this right of possession except through the particular estates of the husbands of these sisters, and their estates are each, as against the defendants, not determined but barred by the statute. In respect then to this freehold, neither the husband, nor the grantee of the husband, can maintain this action. See *Lessee of Thompson's Heirs* v. *Green*, 4 Ohio State R. 216; *Neal* v. *Robertson*, 2 Dana, 86; *Carter* v. *Cartrell*, 16 Ark. 154.

5. The fact that these husbands with their wives conveyed their respective estates to Hibbard Porter, does not aid the plaintiff at all, for it is well settled that the same party may have several and successive estates in the same property, and several rights of entry by virtue of these estates, and one of these rights may be barred without the others being affected. *Hunt* v. *Burn*, 2 Salk. 422; *Wells* v. *Prime*, 9 Mass. R. 508; *Stevens* v. *Winship*, 1 Pick. R. 318; *Ulson* v. *Thompson*, 10 Pick. R. 359.

6. It cannot be successfully contended that the freehold of the husband is saved by the tenth section from the operation of the eighth section.

The tenth section provides, that the eighth section shall not extend to lands where there shall be an adverse title, and the holder of such adverse title is a *feme covert*, provided *such person* shall commence an action to recover such lands within three years after such disability shall cease to exist. The object of this section was to grant a privilege to the wife, and not to the husband. This is moreover a personal privilege, a protection to the wife, and cannot be set up by her grantee or releasee. *Williams* v. *Council*, 4 Jones (N. C.) 206; *Carter* v. *Cartrell*, 16 Ark. 154.

The language of this section is, provided *such person*, not the grantee of such person, shall commence an action, etc.

The disability of the *femes covert* ceased to exist, in this case, the moment they made a valid conveyance; so their grantee must sue within three years after the deed was made.

7. Notwithstanding the merger of the particular estate, persons who have interests affecting the estate which is merged, will be left in the same condition, in point of benefit, as if no merger had taken place. Preston on Merger, 447, 448; 17 Law Lib. (4th series) 191, 192.

Mr. Borden, for the plaintiff in error, in reply.

The fifth point made by defendants' counsel is not law. 2 Salk. 422, holds only that one may have several remedies for the same right, and be barred of his formedon; he may yet have his right of entry.

A reversioner may have two rights of entry; he may enter for a disseizin, or he may enter after the determination of the life estate by death of tenant for life.

Definition of Merger, 2 Black. Com. 177; 1 Wend. 478. And the rule is inflexible *at law.* 2 Cowen, 300. As to the effect of merger: It will change the line of descent. *Nicholson* v. *Halsey,* 1 Johns. Ch. 417. It will extinguish a rent and the covenants to pay it. *Webb* v. *Russell,* 3 Tenn. R. 393. When an estate*is merged, the rights under it, and the bars against it, are extinguished *at law.*

In *Webster* v. *Gilman,* 1 Story, 499, the deed of a tenant for life was not operative as a conveyance by reason of the adverse possession; but if it had been, it could not have benefited the demandant, because his count was for a life estate, whereas, if the deed had been operative, he would have been entitled, by *the merger, to a greater estate.*

Mr. Justice Walker delivered the opinion of the Court.

There was no disability existing to prevent Mehitabel and W. P. Gilson, from instituting proceedings to recover their undivided interests in these premises, during the time they were the owners of the property. Nor did any exist to pre-

vent plaintiff in error, after his purchase, and before the seven years of actual possession, and payment of taxes, under claim and color of title, by Starkweather, had expired.  He, it appears, entered into, and held the possession of. the premises, under claim and color of title, for the period of limitation, and paid all taxes legally assessed for the period of seven years.  This, without an actual, peaceable entry, payment of some portion of the taxes, or the institution of a suit to recover the possession, within that period of time, bars the right to recover the undivided half claimed through Mehitabel and W. P. Gilson, by their conveyance to plaintiff in error.

It appears from the evidence, that Harriet W. Reed, and Caroline E. McAlister, who, as sisters of Hiram Gilson, inherited each one-sixth part of the premises, were, at the time of his death, *femes covert*, and had children of the marriage, and that they and their husbands are still living. That they joined with their husbands, in March, 1856, in conveying their interest in this land to Hibbard Porter, who, in June, 1860, for a nominal consideration expressed in the deed, conveyed it to plaintiff in error.  It also appears, that at the time of the death of Hiram Gilson, his sister, Phila D. Porter, then the wife of Hibbard Porter, inherited one-sixth of the premises in controversy.  That she had children born alive by the marriage, and died in the year 1852, leaving children then and now surviving her.

At the death of Hiram Gilson, all these sisters were married, and had children then living, the issue of their several marriages.  Their husbands thereby became invested with, or entitled to, a life estate in their wives' share of this property, by the curtesy initiate.  This life estate of the husband, with the wife's remainder, constitutes the entire estate in, or title to, the wife's share of the property.  This interest of the husband in his wife's property, is a vested legal estate, subject to sale on execution, or by himself.  He could have leased it, to the extent of the whole or any portion of the term.  2 Kent, 130 ; *Thompson* v. *Green*, 4 Ohio State R. 217 ; *Schermerhorn* v. *Miller*, 2 Cowen, 439.  Nor can the

estate of the wife take effect in her during the coverture. The estate of the husband is carved out of, and is a distinct estate from hers. He holds it as if he had acquired it by deed, and it is liable to all the incidents of any other freehold or life estate, until it is again merged into the fee simple.* If he were to convey or lease it, the title of the grantee or lessee could not be defeated by the husband and wife joining in a subsequent conveyance. They would thereby pass the wife's remainder, but could not affect the present estate created by the husband's previous conveyance. Until the death of the husband, his grantee would be entitled to hold the premises. Nor need the wife join with the husband to pass his life estate, nor in a suit to recover the possession for the husband, or for damages sustained by trespass.

He, then, having a separate estate from that of his wife, in the premises, with a present right of possession, and being at liberty to sue and recover the possession in his own right, for his own use, without the assent of the wife, no reason is perceived why his title may not be barred by the statute of limitations. It has never been questioned that a term of years, or life estate, might not be as effectually barred, as a fee simple or other estate. And no reason is perceived why the husband's life estate in the lands of his wife should form an exception to the general rule. This is by no means a question of first impression, as it has been discussed and authoritatively determined in various States of the Union. *Thompson* v. *Green*, 4 Ohio State R. 216 ; *Neal* v. *Robertson*, 2 Dana, 86 ; *Carter* v. *Cartrell*, 16 Ark. R. 154. And in the case of *Wright* v. *Plumptree*, 3 Barn. & Ald. 474, it was held, that the husband who claims in the right of his wife, must make his entry or lose his action to avoid a fine, in five years after his right accrued. In support of the decision, *Hulm* v. *Heylock*, Cro. Car. 200, is referred to by the court as being directly in point. The principle decided in these cases, is precisely the same as that involved in the case under consideration.

* See act February 21, 1861, (Acts 1861, p. 143) entitled "An Act to protect married women in their separate property," as to its effect upon the husband's interest in the wife's property.

The bar of the statute against a recovery by the husband, cannot be avoided by the institution of a suit by husband and wife. The wife's interest is not a present, but a future estate, dependent upon the death of the husband. It is true, that by the operation of the statute, the husband may have lost his estate in the lands, but it does not therefore follow, that the wife has become vested with his estate, or that it has merged in the fee, and created a present estate in the wife. She is unable to sue alone during the coverture; and if she join with the husband, his right is barred by the statute; if she can recover at all, it must be jointly with him; and when his right is defeated, there can be no remedy. This view of the case seems to have been almost conceded in the argument. This life estate, like any other present estate, capable of being reduced to possession by the owner, not under disability, or within the savings of the statute, is subject to, and governed by, its provisions. The wife's estate is saved from the bar of the statute, but cannot have effect during the coverture. The recovery, then, by the husband and wife being barred, their grantee is in the same condition as though the estate were held by them. The purchasers succeeded to their rights precisely as they existed at the time the conveyance was executed. Though, after the death of the husband, the purchaser may no doubt sue for and recover the fee, as it was not barred — but only the life estate. *Gregg* v. *Tesson*, 1 Black, 150.

It is, however, insisted, that the fourth section of the conveyance act (Rev. Stat. 1845, 103; Scates' Comp. 959) controls the operation of the statute of limitations. That section provides, that persons claiming title to lands, although out of possession, and notwithstanding an adverse possession, may sell, convey and transfer their interest in the same, as completely as if they were in actual possession of the lands; and the grantee shall have the same right of action for its recovery, and in all respects derive all the benefits and advantages from the conveyance, as if the grantor had been in actual possession at the time of executing the conveyance. It is urged, that this provision, where a conveyance is made by a person out of possession, arrests the operation of the statute of limita-

tions, precisely as though the grantor had acquired the possession at the time the deed was executed; — that such a conveyance destroys the operation of the statute up to the time of the execution of the deed, and the full period of the statutory limit must subsequently elapse, coupled with its other requirements, before it can form a bar to a recovery.

The first section of the conveyance act, dispenses with livery of seizin, as a requisite to the validity of a conveyance of real estate. At the common law, livery of seizin was indispensable to the complete investiture of title. To render livery of seizin availing, it was necessary that the grantor should be in possession of premises. This provision, then, was to enable parties to transmit real estate by deed, although not in possession, and unable to make livery of seizin. It rendered deeds of conveyances for vacant and unoccupied lands valid, although livery of seizin was not made. It was also a rule of the common law, that all conveyances of real estate, in adverse possession, were void, because the grantor being out of possession, was unable to invest the grantee, and also for the reason that the grantor was held to only have a right of action, which was not assignable at the common law. 4 Kent, 448; *Jackson* v. *Dumont,* 9 Johns. R. 55; *Fite* v. *Doe & Dun,* 1 Bl. 127. By various acts of parliament in Great Britain, and the legislatures of various States of the Union, this portion of the common law has been enacted under the title of champerty and maintenance acts, with penalties superadded. These sections were doubtless enacted with a view to avoid the effects and consequences of the common law, and the ancient champerty and maintenance laws, which would otherwise have been in force in this State. This seems to have been the reason that induced their adoption, and such is the full scope of their operation.

They were not adopted with reference to the statutes of limitation. And to give to the fourth section the operation claimed, would be to render these statutes almost if not entirely inoperative. Under such a construction, the holder of title out of possession, would only have to make a conveyance before the bar was complete, to arrest the statute, and require

it to again commence and run its full period, to form a bar. And his grantee would have the same right, by similar means, of producing the same result, and this might be continued perpetually. This manifestly was not the design of the General Assembly, in adopting these provisions. And unless the language employed was such as to preclude every other construction, we cannot defeat the operation of all our statutes of limitation, by adopting that contended for by plaintiff in error.

The design of the General Assembly, no doubt, was simply to invest the purchaser of premises, and those in adverse possession, with all the rights of the grantor, precisely as he then held them.. Any other construction would virtually repeal the limitation laws, in reference to real estate, and be fraught with consequences never contemplated or intended by the General Assembly. The plaintiff having only acquired the rights of his grantors as they existed at the time he received his deed, and the statutory period of limitation having run against him and his grantors, he has no right to recover.

The judgment of the court below is therefore affirmed.

*Judgment affirmed.*

Mr. Chief Justice Caton, concurred.

Mr. Justice Breese, dissented.