Syllabus.

JOHN COWARD

*v.*

MATILDA COWARD *et al.*

*Filed at Springfield November 28, 1893.*

1. PURCHASE—*by an agent at his own sale.* An agent or trustee intrusted with the sale of property of his principal or *cestui que trust* can not become the purchaser thereof, either directly or indirectly, without the consent of his principal. If he is interested in a sale made by himself, the principal will be entitled, as a matter of course, to have the sale affirmed or set aside, as he may choose.

2. LIMITATION—*color of title—under act of 1839.* Where an agent, under a power of attorney, conveys land of his principal to another person, who conveys the same to the wife of the agent, under a parol agreement, made before her marriage to have such conveyance made, the deed to the wife purporting to convey the title will be color of title, and when acquired in good faith, if followed by seven years' possession and payment of taxes, will bar a bill by the principal to set the conveyance aside.

3. SAME—*may be invoked without being pleaded.* On bill to set aside a deed made in fraud of his rights, the holder under such deed may show title, under the act of 1839, by proof of color of title and possession, and payment of taxes thereunder, for seven successive years, under his claim of ownership, without setting up the statute in his answer as a defense.

4. Under the act of 1839, when the right of entry and right of action are lost by operation of the statute, the party in possession is conclusively presumed to be the owner. When the bar of the statute is complete, the party entitled to hold the land in possession will, under the statute, have an absolute title for attack as well as for defense.

5. In an action at law, where the defendant relies on title acquired and held under the limitation laws of the State, he is not required to plead the limitation laws in order that he may establish, by proof, his title on the trial. The same rule applies when the suit is by bill in equity.

6. SAME—*good faith in acquiring color of title.* Good faith in the acquirement of color of title, within the meaning of the act of 1839, does not require ignorance of adverse claims or defects in the title. Notice, actual or constructive, is of no consequence. There is good faith where there is no fraud and the color of title is not acquired in bad faith.

APPEAL from the Circuit Court of McDonough county; the Hon. CHARLES J. SCOFIELD, Judge, presiding.

Messrs. NEECE & SON, for the appellant:

A voluntary conveyance is binding on the parties to it. *Fitzgerald* v. *Forristal,* 48 Ill. 228.

A voluntary conveyance will not create a trust. *Stevenson* v. *Crapnell,* 114 Ill. 19.

An attorney, trustee or agent can not become a purchaser, directly or indirectly, at his own sale of trust property. *Penson-neau* v. *Bleakley,* 14 Ill. 15; *Borders* v. *Murphy,* 125 id. 577.

The Statute of Limitations must be specially relied on and set up in the answer, to avail as a defense in equity. *School Trustees* v. *Wright,* 12 Ill. 432; *Hannas* v. *Hannas,* 110 id. 53.

Messrs. BAILEY & HOLLY, for the appellees:

When *laches* is apparent on the face of the bill, the answer need not set it up. *Beach* v. *Shaw,* 57 Ill. 17; *Bell* v. *Johnson,* 111 id. 374.

Where an attempt is made to explain the delay, it is not necessary to set up a defense of *laches* in the answer. *Hall* v. *Fullerton,* 69 Ill. 448; *Williams* v. *Rhodes,* 81 id. 571; *Simpson* v. *McPhail,* 17 Ill. App. 499.

Fraud is never presumed, but it must be clearly proved. *Schroeder* v. *Walsh,* 120 Ill. 403; *Shinn* v. *Shinn,* 91 id. 477; *O'Neal* v. *Boone,* 82 id. 589; *Mey* v. *Gulliman,* 105 id. 272; *Pratt* v. *Pratt,* 96 id. 184.

Marriage constitutes a valuable consideration,—as much so as money. *Otis* v. *Spencer,* 102 Ill. 622; *Parsons* v. *Ely,* 45 id. 232; *Whitehall* v. *Lousey,* 2 Yeates, 109.

Where an obligation would be binding but for some rule of law, it will form a good consideration for a promise.

Nothing to the contrary appearing, a purchaser for value is presumed to be a purchaser in good faith, without notice. *Putnam* v. *Dobbins,* 38 Ill. 394; *Anthony* v. *Wheeler,* 130 id. 128.

An innocent purchaser without notice is not affected by fraud on the part of his grantor. *McNab* v. *Young*, 81 Ill. 11; *Dickerson* v. *Evans*, 84 id. 451; *Hunter* v. *Stoneburner*, 92 id. 75.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill brought by John Coward, on the first day of September, 1892, against Matilda Coward and Henry Hoyt, to set aside two deeds, one dated February 25, 1885, by William Coward, as attorney in fact of complainant, to Reuben M. Folts, conveying lot 1 in block 14, and three other lots, in the town of Colchester, McDonough county, and the other executed June 10, 1885, by Reuben M. Folts and wife to Matilda Coward, conveying said lot 1.

The grounds relied upon to impeach the deeds, as disclosed by the bill, are substantially as follows: That complainant, on September 21, 1883, and prior thereto, was the owner in fee simple of lot 1 in block 14, lots 2 and 3 in block 11, and lot 7 in block 6, in the town (now city) of Colchester, in McDonough county, Illinois, lot 1 in block 14 being the property in controversy in this case; that on said day he executed and delivered to one William Coward a power of attorney to sell and convey, lease and exercise general control over said lots; that on February 25, 1885, said William Coward, as such attorney and by virtue of said power, made a pretended sale and conveyance of all of appellant's interest in all of said lots to one Reuben M. Folts, for a pretended consideration of $1200; that no consideration passed from said Folts to William Coward or appellant, and that he never received any consideration therefor; that such conveyance was made without appellant's knowledge or consent, and that said William Coward and said Folts conspired together and intended to defraud appellant of his property; that on June 10, 1885, the said Reuben M. Folts and his wife conveyed said lot 1 in block 14 to Matilda Coward, one of the defendants to the bill,

by a quitclaim deed, for a pretended consideration of $500, and that she has since claimed to own said lot; that such conveyance was wholly without consideration, and that said Matilda Coward paid nothing to said Folts or appellant therefor, and that it was made in pursuance of the conspiracy to obtain the title to appellant's property; that said Matilda Coward was, at the time of the last mentioned conveyance, the wife of said William Coward; that she had full knowledge that the conveyance from said William Coward, under said power of attorney, to said Folts, was fraudulent, and knew that appellant was rightfully the owner of said lots; that the defendant Henry Hoyt is in possession of said lot 1 as a tenant of Matilda Coward.

Matilda Coward answered the bill, in which she denied that complainant ever owned lot 1 in block 14, in Colchester; denied that the conveyance by William Coward, as attorney, was pretended and without consideration, and that it was made to defraud appellant, and without his knowledge or consent; alleged the payment of a valuable consideration by Folts to the attorney, and that appellant had knowledge of such conveyance, and consented thereto at the time; admitted the conveyance of said lot on June 10, 1885, by a quitclaim deed of Folts and wife to Matilda Coward, but denied that it was without consideration and made to defraud appellant; admitted that at the time of the several conveyances Matilda Coward was the wife of said William Coward, but denied that she knew that they were without consideration. The defendant also set up in her answer that prior to September 21, 1883, William Coward was the owner in fee of the lot; that on that day he conveyed to John Coward, without consideration; that at the time of the conveyance from William to John Coward, complainant made and delivered the power of attorney to sell, for the purpose of giving William Coward power to dispose of the premises and turn the proceeds over to himself; that on the day set out in the bill, William Coward sold and conveyed

the premises to Reuben Folts for a valuable consideration, to-wit, $1200; that on June 10, 1885, Folts conveyed to defendant Matilda Coward, for a valuable consideration, to-wit, $500; denied a conspiracy to cheat or defraud appellant, and that he has been defrauded, and denied that the complainant in the bill is entitled to any relief prayed.

It appears from the evidence in the record that in 1883 William Coward owned four houses and lots in Colchester, McDonough county. On the 3d day of August, 1883, an action for slander was brought against Rebecca Coward, then the wife of William Coward. William and his wife resided in McDonough county, and the complainant, John Coward, a nephew, resided in Pennsylvania. On the 11th day of September, eight days after the slander suit was brought, William Coward, and Rebecca, his wife, by deed of that date, conveyed the four lots in Colchester to John Coward. It is conceded that this deed was made without consideration. Indeed, the complainant testified that there was no consideration for the deed,— that the lots were conveyed to him as a gift. On the 21st day of September, 1883, the complainant executed a power of attorney to William Coward, authorizing him to sell and convey the lots. In the fall of 1883 the slander suit was dismissed, and a short time thereafter Rebecca Coward died. In 1884 William Coward married Matilda, the defendant. John Coward never exercised any acts of ownership over the property or set up any claim until the filing of the bill. On the 25th day of February, 1885, William Coward, as attorney in fact of John Coward, conveyed the four lots to Reuben M. Folts for a consideration named in the deed of $1200, and on June 10, 1885, Folts and wife conveyed lot 1 in block 14, the property in controversy, to Matilda Coward, for an expressed consideration of $500, and on the same day Folts conveyed the other three lots to William Coward. At the time the deed was made to Folts he executed his note for $1200, which was delivered to William Coward, but when

Folts subsequently conveyed lot 1 in block 14 to Matilda Coward, and the other three lots to William Coward, the note was surrendered.

The power of attorney from the complainant to William Coward conferred the undoubted power to sell the lots, and if William Coward, under the power, had made a sale to a stranger, no question could arise as to the validity of the sale. But William Coward, being the agent of John Coward entrusted with the sale of the property, could not become the purchaser without the consent of his principal. In *Borders* v. *Murphy*, 125 Ill. 583, the law on this subject is stated, as follows: "The general rule on this subject is, where a trustee of any description, or person acting as agent for others, sells a trust estate, and becomes himself interested, either directly or indirectly, in the purchase, the *cestui que trust* is entitled, as a matter of course, at his election, to have the sale affirmed or set aside." Here it is apparent that while, in form, the property was sold to Folts, yet, in fact, the transfer to him was in the interest and for the benefit of the attorney, William Coward, and, had proceedings been instituted in apt time, it may be a court of equity might properly have rendered a decree setting aside the sale and deeds made under the sale. But whether the complainant was entitled to recover from the defendant Matilda Coward the lot conveyed to her at the time of filing his bill, on September 1, 1892, presents a different question.

It appears from the evidence that prior to the marriage of William and Matilda Coward, William agreed, in consideration of the marriage, to convey the property in question to her, and in pursuance of this parol agreement, on June 10, 1885, the deed was made from Folts to Matilda Coward. Under this deed Matilda Coward went into the possession of the lot, and continued in the possession for a period of seven years before suit was brought, and during the period of seven years while she was in possession she paid all taxes on the

18—148 ILL.

property.  Conceding that the deed from Folts to Matilda
Coward did not pass a paramount title, yet that deed purport-
ing to convey the lot to her, under the uniform ruling of this
court was color of title, and seven successive years' possession
and payment of taxes under color of title is a bar to a recovery
in an action instituted by the party holding the paramount
title, unless such person is under disability, which is not the
case here.

, But it is said in the argument, that the defendant has not
pleaded *laches* or the Statute of Limitations, and hence she
is precluded from relying on that defense.  The defendant is,
not relying on the *laches* of the complainant or a statute of
limitations which may be pleaded in bar of an action.  That
is not her position, as we understand the record.  The com-
plainant claims to be the owner of the lot in controversy, and
seeks to set aside two deeds under which defendant claims
title.  The defendant, on the other hand, claims to be the
absolute owner of the lot, and for the purpose of establishing
her title and ownership, she read in evidence a deed from
Folts to herself, which·is color of title, and makes proof of
seven years' possession and payment of taxes under such
color of title, which, under the law, establishes title in herself.

Under the act of 1839, where the right of entry and right
of action are lost by operation of the statute, the party in·
possession is conclusively presumed to be the owner.  (*Faloon.*
v. *Simshauser*, 130 Ill. 649.)  Where the bar of the statute
has become absolute, as in this case, and the party entitled
to hold the land is in possession, the title acquired and held
under the Statute of Limitations is as available for attack as·
defense, and it may be asserted against all persons claiming
the land. (*Hale* v. *Gladfelder*, 52 Ill. 91; *McDuffee* v. *Sinnott*,
119 id. 449; *Gage* v. *Hampton*, 127 id. 87.)  The defendant
had the right to prove that she was the owner of the property
and held an absolute title.  Whether that title was derived
under the Limitation act of 1839, or whether she acquired

and held title in some other manner, was a matter of no consequence to the complainant,—in other words, it was her right to establish title in any manner she could. In an action at law, where the defendant relies on title acquired and held under the limitation laws of the State, he is not required to plead the limitation laws in order that he may establish, by proof, his title on trial, and we are aware of no well settled rule which requires a defendant to plead the limitation laws to enable him to establish title thereunder, in a suit in equity.

But it is said the defendant did not acquire title in good faith. There is good faith where there is no fraud and the color of title is not acquired in bad faith. (*McConnel* v. *Street,* 17 Ill. 253; *Stubblefield* v. *Borders,* 92 id. 279.) Good faith in the acquirement of title, within the meaning of the statute, does not require ignorance of adverse claims or defects in the title. Notice, actual or constructive, is of no consequence. (*Chickering* v. *Failes,* 26 Ill. 507; *Dickenson* v. *Breeden,* 30 id. 279; *McCagg* v. *Heacock,* 34 id. 476; *Coleman* v. *Billings,* 89 id. 183; *Piatt County* v. *Goodell,* 97 id. 84.) There may be good faith notwithstanding actual notice of existing claims or liens, or knowledge of legal defects which prevent the title of which there is color, from being absolute. *McCagg* v. *Heacock, supra; Brian* v. *Melton,* 125 Ill. 647.

Under the authorities cited, it is manifest that there is no sufficient evidence in the record to establish that the defendant acquired title in bad faith. She knew that the complainant was claiming title to the property, but, as held in the cases cited, notice of existing claims or knowledge of legal defects does not establish bad faith. The deed to her purported, on its face, to convey title. She was guilty of no fraud in procuring it. She believed the deed passed title to her, and we think she acquired title in good faith.

The decree of the circuit court will be affirmed.

*Decree affirmed.*