EMMA DAWSON *et al.*

*v.*

SARAH H. EDWARDS *et al.*

*Opinion filed February 20, 1901.*

1. LIMITATIONS—*effect of intervening estate by curtesy.* When an estate by curtesy exists, the Statute of Limitations does not run against the wife or her descendants while such estate continues, since the husband is the party entitled to sue for possession.

2. SAME—*effect where estate by curtesy becomes barred.* The completion of the bar of the statute against an estate by the curtesy does not start the statute to running against the remainder in fee vested in the heirs of the wife, since, though the estate by curtesy is barred, it is not merged in the fee, and the fee owners have no right to enter or sue for possession during the husband's lifetime.

3. EVIDENCE—*what sufficient to show disseizin of co-tenants.* The execution of a deed by one alleged co-tenant with full covenants of title, and the subsequent re-purchase of the land by him under a deed containing like covenants, together with the record of the deeds and his subsequent possession and acts indicating an open claim of exclusive ownership, are sufficient to show a disseizin of his alleged co-tenants.

4. COLOR OF TITLE—*bad faith must be established by proof.* Bad faith must be established by proof before the effect of a deed as color of title can be defeated upon that ground.

APPEAL from the Circuit Court of McLean county; the Hon. JOHN H. MOFFETT, Judge, presiding.

BARR & POLLOCK, and FIFER & BARRY, for appellants:

One tenant in common may disseize a co-tenant by acts appropriating the exclusive possession of the land

or pernancy of the profits, and especially when such acts are accompanied by declarations of such an intention or it is unequivocally manifested by them. So a sale of the whole tract, followed by adverse possession, amounts to an ouster of the co-tenants, and the Statute of Limitations will bar their action or entry. *Kotz* v. *Belz,* 178 Ill. 434; *Goewey* v. *Urig,* 18 id. 238.

If a tenant in common ousts his co-tenant, claiming the land as his own, and keeps him out, not recognizing his rights but denying them, the Statute of Limitations will run and bar a recovery, the same as if they were not tenants in common. *Kotz* v. *Belz,* 178 Ill. 434; *Lavalle* v. *Strobel,* 89 id. 370.

If one of several tenants in common makes a deed purporting to convey only his interest in the premises, the grantee will become a tenant in common with the others, and his deed will not be color of title to any greater interest than his grantor had; but where the tenant in common makes a warranty deed for the entire estate, this will operate as a disseizin to his co-tenants, and the Statute of Limitations will commence running against them from the moment such deed is placed upon record. *Burgett* v. *Taliaferro,* 118 Ill. 505.

A deed from a tenant in common who only owns an undivided interest, but which purports to convey the title to the whole, is claim and color of title. *Hinchman* v. *Whetstone,* 23 Ill. 108; *Hinkley* v. *Greene,* 52 id. 223; *Burgett* v. *Taliaferro,* 118 id. 505.

FRANK B. McKENNAN, (OWEN T. REEVES, of counsel,) for appellees:

The possession of land by a tenant for life cannot be adverse to the remainder-man or reversioner; and if the life tenant conveys to a third person by words purporting to pass the absolute property, the possession of the purchaser cannot be, during the continuance of the life estate, adverse to the remainder-man or reversioner, so

as to set the Statute of Limitations running against the latter. Such possession is, in contemplation of law, the possession of the remainder-man or reversioner. Until such life estates terminate, the remainder-man or reversioner has no right of action, and the Statute of Limitations will not begin to run against a party before his right of action accrues. Until then no *laches* is imputable to the party holding title. *Mettler* v. *Miller*, 129 Ill. 630.

The interest of the husband as tenant by the curtesy initiate, prior to the abolition of the estate of curtesy was a legal estate, which was salable and assignable. *Mettler* v. *Miller*, 129 Ill. 630.

The Statute of Limitations does not run as between tenants in common. The possession of one is the possession of all—especially so when all the parties derive title from the same source. *Cotter* v. *Dearborn*, 115 Ill. 509.

A mere continuance of occupancy and exclusive appropriation of rents and profits, with the making of slight improvements and the payment of taxes, is not enough to give one of several co-tenants an adverse possession. *Busch* v. *Huston*, 75 Ill. 344.

One tenant in common cannot set up the bar of the Statute of Limitations to defeat an action brought by his co-tenant, for the reason that his possession is not adverse. Possession of land, however long continued, unless adverse, will not defeat a recovery on behalf of the owner. *Stevens* v. *Wait*, 112 Ill. 544.

When one tenant in common undertakes to establish an adverse possession as against his co-tenant, in order to constitute disseizin there must be outward acts of exclusive ownership of an unequivocal character, overt and notorious, and of such a nature as by their own import to impart information and give notice to the co-tenant that an adverse possession and an actual disseizin are intended to be asserted against him. It is not sufficient that he continue to occupy the premises and appropriate to himself the rents, issues and profits, make slight re-

pairs and improvements on the land, pay the taxes, etc., for all this may be done and be consistent with a continued recognition of the rights of all others. In fact, such possession by one tenant in common is the possession of all. He may even buy outstanding title, and it will be held for the benefit of all. Especially is this so when the rights as co-tenants arise from the same source as here. *Busch* v. *Huston*, 75 Ill. 343; *Mettler* v. *Miller*, 129 id. 630; *Boyd* v. *Boyd*, 176 id. 40; *Sontag* v. *Bigelow*, 142 id. 143; *Wright* v. *Stice*, 173 id. 571.

Mr. JUSTICE CARTER delivered the opinion of the court:

In April, 1897, the appellees brought their bill in the court below for the partition of eighty acres of land of which Jacob Harness died seized in fee simple in 1840. At his death Jacob Harness left surviving him, besides his wife, who died in 1851, four children, his only heirs-at-law, viz., his son, Isaac Harness, and three daughters: Sarah H., who was then married to John Edwards and had children living; Mahala, who was then married to Henry Busic and had children living; and Debby, who was married to James Chance. John Edwards died in 1870. The personal property of Jacob Harness at the time of his death was worth about $400 and this tract of land about $100. Isaac Harness took possession of the land upon his father's death, and thereafter continued in possession of it, paid all taxes upon it, improved it, collected and used the rents and profits as his own, claiming the land as his own property, until his death, in 1895, except for a period of five years from 1871, (when he sold and conveyed it by a deed of general warranty, for a valuable consideration, to his son, William Harness,) until 1876, when the latter, for a valuable consideration and with a like deed, sold and conveyed the tract to said Isaac. Isaac Harness, upon his death, in 1895, devised the land to his daughter, Emma Dawson, for life, with remainder to the heirs of her body. Said Emma and her

children are the appellants herein and were defendants below to the bill.

It was not shown that either of the three sisters of Isaac Harness ever conveyed her interest in the land to him, but the defenses of his successors to the title (who continued in possession and paid all taxes to the time of the filing of the bill) were, first, that upon the death of Jacob Harness his said four children came together, and by agreement the three daughters took and received the personal property and the son, Isaac, the land in question, and that possession was taken according to this agreement; second, that the suit was barred by the Statutes of Limitations, respectively, of twenty years and of seven years; and third, that the complainant Sarah H. Edwards was barred and estopped by the verdict and judgment against her in a certain action which she had brought in the circuit court of McLean county against the executors of the will of Isaac Harness, wherein, under certain counts of her declaration, she sought to recover the purchase price or the value of her interest in the land upon an alleged sale to Isaac, alleged to have been made by her after the death of her husband, John Edwards, in 1870.

The court below sustained the defense of estoppel by judgment against Sarah H. Edwards, but found and decreed that the appellees who were the heirs of Mahala Busic were entitled to the one-fourth interest in the land inherited by her from her father, said Jacob Harness. Sarah H. Edwards has assigned cross-errors, contending here that she is not barred or estopped, but is the owner of her alleged one-fourth interest and is entitled to have the same set off to her.  Debby Chance died in 1867, and her husband, James Chance, in 1892.  They had no children, but she had an illegitimate child before her marriage, who was her heir and who was made a defendant to the bill and defaulted.  It was decreed below that his interest was barred by the Statute of Limitations, and

he has not appealed or assigned error here. The only interests to be considered are the one-fourth claimed by appellee Sarah H. Edwards and the one-fourth claimed by the other appellees who are the heirs of Mahala Busic.

There was some evidence tending to prove a division of the estate of Jacob Harness in 1840 by his four children among themselves, by which Isaac took the land and the three daughters and their husbands took the personal property or the proceeds of the sale of it, but no deed was shown to have been made, and what the real facts were would be difficult to prove with any certainty after the lapse of so many years. It clearly appears, however, from the evidence, that during all of the long period of years from 1840 to 1895, when Isaac Harness died, except the period of five years from 1871 to 1876, he held the undisputed possession of the whole of the eighty-acre tract, openly, notoriously and adversely, claiming it as his own property, paying all taxes on it, renting it and collecting and using as his own all rents and profits derived from it, and making improvements on it of more or less value. He also conveyed it, with other adjoining lands, to his son, William Harness, in 1871, by a deed with full covenants of title, for the expressed consideration of $12,000, and after five years it, with said other lands, was re-conveyed to him by a like deed for the expressed consideration of $10,000. These deeds were placed on record at the time. It is obvious that unless the case falls within some exception or reservation in the statute, or is for some legal reason not subject to its provisions, all right of the complainants to assert title in the property was barred by limitation before this suit was brought.

As the law stood in 1840, when Sarah Edwards and Mahala Busic became vested with their respective interests, the husband of each became seized of an estate by the curtesy initiate, inasmuch as there was seizin in the wife, marriage, and the birth of children capable of inheriting. The husband was entitled to the possession

and was the proper party to sue for its recovery. The Statute of Limitations did not, therefore, run against the wife until the intervening estate in the husband had terminated. (*Shortall* v. *Hinckley*, 31 Ill. 219.) Inasmuch as Mahala Busic died in 1858, leaving her husband surviving her, his interest in her one-fourth was an estate by the curtesy consummate, and he alone could sue for the possession. It follows that the statute did not begin to run against Mahala Busic during her life, nor against her descendants during her husband's life, because of his intervening life estate.

Counsel for appellants contend that the statute would run against his estate by the curtesy, and that it was barred at the end of twenty years,—that is, in 1860,—and that when it became thus barred the statute would begin to run against the remainder in fee vested in the heirs of Mahala, his deceased wife. To the first part of this proposition we accede, for the life estate of Henry Busic undoubtedly became barred by the statute in 1860. But it does not follow that it thereby became merged in the fee so as to enable the owners of the title in fee to sue for and recover possession. This court said in *Shortall* v. *Hinckley, supra,* (on p. 228): "It is true, that by the operation of the statute the husband may have lost his estate in the lands; but it does not therefore follow that the wife has become vested with his estate, or that it has merged in the fee and created a present estate in the wife." In that case the wife or her grantee was the owner of the fee when her husband's estate by the curtesy initiate became barred, and in this case, the wife being dead, her heirs were the owners of her title. The right to rely upon the statute is a personal privilege, which may be waived, and it by no means follows that because Isaac Harness could have successfully pleaded the statute against Henry Busic his estate by the curtesy had terminated or had merged in the fee, so as to give the fee owners the immediate right to sue for possession. (See,

also, 66 U. S.—1 Black,—150.)   Having no right to enter
or to sue for the possession until the termination of the
life estate of Henry Busic, the statute did not run against
them until his death.

Counsel for complainants say that he died in 1892, and
that as the suit was begun in 1897 the statute prescrib-
ing the limitation of seven years did not bar the action.
It was, however, alleged in the bill that he died in 1889,
and this was admitted by the answer.   The date of his
death was not, therefore, in issue but was fixed by the
pleadings.   The proof showed that he was dead, but it
was too vague and indefinite to fix even the year of his
death.

Holding, then, that as to those of the appellees who
claim as heirs of Mahala Busic no cause of action to re-
cover possession accrued until the death of their father,
Henry Busic, in 1889, and the consequent termination of
his intervening life estate, the Statute of Limitations did
not begin to run until such termination, and the twenty
year statute could not, therefore, have barred their right
of action before the suit was begun, in 1897.   We are un-
able to see, however, why the seven year statute should
not have been held a complete bar to said action as to
all of the complainants.   Mary J. Brown, (nee Busic,) the
mother of the infant complainants, Ettie Brown and Earl
Brown, did not die until the statute had commenced to
run, and it continued to run, of course, after her death
until the bar became complete.   As to all of the claim-
ants the cause of action was barred when the bill was
filed, and the court below erred in not so finding.

Substantially the only grounds urged by counsel for
the Busic heirs for their contention that their action was
not barred by the Statute of Limitations of seven years
are, first, that Isaac Harness and his devisees were in
possession as tenants in common with the other heirs,
and not as sole owner or owners; and second, that his
possession was not under claim and color of title made

in good faith, as required by the sixth section of the Limitation act,—that the element of good faith was lacking. It is not necessary here to rehearse the evidence, but it clearly shows that he claimed full title to the property, and not merely as one of several tenants in common. He conveyed it in 1871 for its full value by deed with full covenants of title, and five years later re-purchased it, obtaining a conveyance with like covenants of title, and thereafter during the rest of his life, and his devisees after his death, remained in the open, notorious and undisturbed possession of the whole tract, claiming to own it, making valuable improvements, leasing it and collecting and appropriating the rents and profits, and paying all taxes assessed against it, with no recognition of any interest whatever in the land as existing in any other person whomsoever. While the deed made by him in 1871 to William Harness purported to convey full title to the whole of the land, there was no conveyance to him prior to that of William Harness, made in 1876, which purported to convey the title and which could operate as color of title. But these deeds and the record thereof, coupled with his possession and acts indicating an open claim of exclusive ownership, were sufficient to show disseizin of his co-tenants, even if he had previously recognized the alleged co-tenancy. *Burgett* v. *Taliaferro*, 118 Ill. 503; *Kotz* v. *Belz*, 178 id. 434.

Nor can we regard the evidence bearing upon the question whether or not Isaac Harness had ever paid for the interests of his sisters in the land as sufficient to show, in the face of the other evidence, that he was in possession only as co-tenant and not adversely to the claimants, nor that he did not claim under color of title made in good faith. As said in *James* v. *Indianapolis and St. Louis Railroad Co.* 91 Ill. 554: "A promise to pay for land, although evidence of a debt, is not inconsistent with a title in the promisor to the land." It might affect the running of the statute against the debt, but not

against the promisee's interest in the land adversely held,—unless, indeed, it tended to prove bad faith on his part in his claim and color of title and thus prevent the statute of seven years from becoming a bar. As Sarah H. Edwards' husband died in 1870, his estate by the curtesy terminated and the twenty year statute then began to run against her, and the bar was complete several years before this suit was begun. Nor, as before said, do we find sufficient evidence that the claim and color of title was made in bad faith by Isaac Harness. There was no evidence whatever that the sale and conveyance to William Harness in 1871, and the sale and conveyance in 1876 of William to Isaac, were not made in good faith, for an adequate consideration, or that these sales and deeds were merely colorable and made for the purpose of creating color of title. Good faith is a question of fact and will be presumed; bad faith must be established by proof before the effect of the deed as color of title can be defeated on that ground. *Coward* v. *Coward*, 148 Ill. 268; *Baldwin* v. *Ratcliff*, 125 id. 376; *Sexson* v. *Barker*, 172 id. 361; *Coleman* v. *Billings*, 89 id. 183; *McCagg* v. *Heacock*, 42 id. 153.

Our conclusion therefore is, that as to Sarah H. Edwards her suit was barred under both sections of the Statute of Limitations,—that is, under section 1 providing a limitation of twenty years, and under section 6 providing a limitation of seven years where possession is held under claim and color of title made in good faith, with payment of all taxes during that period; and that, as before said, the other appellees, the Busic heirs, are also barred by the last named statute. The appellants showed no grounds for affirmative relief under their cross-bill, and it was properly dismissed. But for the errors pointed out the decree is reversed and the cause is remanded, with directions to dismiss the bill.

*Reversed and remanded, with directions.*