(No. 14517.—Reversed and remanded.)
STANLEY K. GAGE, Appellant, *vs.* THE CHICAGO TITLE AND
TRUST COMPANY *et al.* Appellees.

*Opinion filed June 21, 1922—Rehearing denied October 5, 1922.*

1. PARTITION—*equity may determine legal titles involved in partition suit.* The jurisdiction conferred by a bill in chancery for partition is concurrent with that exercised by petition under the Partition act, and by section 39 of the act courts of equity may investigate and determine all questions of conflicting or controverted titles.

2. ABATEMENT—*when death of defendant abates suit in ejectment.* Although by statute a suit does not abate upon the death of the sole defendant if it might be originally prosecuted against the heir, devisee or representative, the statute contemplates that the suit be revived against the representative within a reasonable time, and where the plaintiffs in ejectment wait five or six years before having summons issued against the heir of the defendant, the right to revive the suit is lost and the court should of its own motion enter an order abating the suit.

3. SAME—*when a suit is pending.* The pendency of a suit begins with the service of process or appearance, at which time the court acquires jurisdiction, power or control of the subject matter and parties until final judgment.

4. LIMITATIONS—*when beginning of ejectment suit does not stop running of seven-year statute.* The seven-year Statute of Limitations cannot be arrested merely by the commencement of an ejectment suit which is not prosecuted to judgment in the lifetime of the sole defendant nor revived against his heirs within a reasonable time after his death.

5. SAME—*color of title under seven-year statute is presumed to have been acquired in good faith.* Color of title under the seven-year Statute of Limitations is presumed to have been acquired in good faith, and to overcome the presumption the evidence must show an intent to deceive, mislead or defraud, which would constitute bad faith.

6. SAME—*bad faith in acquiring color of title is not shown by proof of defects in the title nor actual knowledge thereof.* A party claiming title under the Statute of Limitations through color of title acquired in good faith and payment of taxes need not show that the title, if traced back to its source, is apparently legal and valid; and where the color of title is originally acquired by a tax

deed issued to the claimants' remote grantor, the fact that there were defects in the proceedings for obtaining the tax deed does not tend to show bad faith in acquiring color of title, nor is actual knowledge of such defects material on the question of good faith.

7. TAX DEEDS—*seal of county court is proper for a tax deed.* Under section 221 of the Revenue act, providing that a tax deed made by the county clerk "under the official seal of his office shall be recorded," the proper seal to be used is the seal of the county court, as being the official seal of the office of clerk of the court, rather than the seal of the county clerk, as keeper of the county records.

APPEAL from the Circuit Court of Cook county; the Hon. HUGO M. FRIEND, Judge, presiding.

ENOCH J. PRICE, for appellant.

HARRY G. HERSHENSON, (DANIEL V. GALLERY, of counsel,) for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellant, Stanley K. Gage, filed his bill of complaint in the circuit court of Cook county on August 30, 1916, alleging that he was the owner of an undivided 1/50th of a lot in Chicago particularly described in the bill, and known as lot 107, in block or division 3, of a South Shore subdivision; that the Chicago Title and Trust Company was the owner in fee of 49/50ths of the lot as trustee for Mary B. Gage; that the title was obtained under the Statute of Limitations through color of title acquired in good faith and payment of taxes; that Mary J. Gallery, Daniel V. Gallery, her husband, and William J. Onahan, claimed to have some estate, right, title or interest in the property but had no right, title or interest therein. All of these parties, and Joseph H. Larson, a tenant, were made defendants, and the prayer was that the title be declared as alleged and the premises partitioned. The

Chicago Title and Trust Company and Mary B. Gage answered, admitting all the allegations of the bill as to the respective interests of the parties. The defendants Mary J. Gallery, Daniel V. Gallery and William J. Onahan filed their plea alleging the pendency of an ejectment suit begun by them in the superior court of Cook county for the possession of the premises on June 17, 1908, in which Mary J. Gallery claimed title in fee subject to the dower of Onahan. The plea was set down for argument and was held bad and overruled. Afterward a similar plea was filed on May 19, 1917, but was withdrawn by leave of court, and on July 5, 1917, the same parties answered the bill forming an issue as to some of the facts alleged in the bill and again alleging the pendency of the ejectment suit. Exceptions to the answer so far as it set up the pendency of the ejectment suit were filed and sustained and those parts of the answer were stricken out. Onahan, who only claimed dower in the premises, died on January 12, 1919, and the suit abated as to him. The issue was referred to a master in chancery to take the evidence and report the same with his conclusions of fact and law. The master took the evidence and returned the same with his finding that the fee simple title to the real estate was as alleged in the bill of complaint, and that the defendants Mary J. and Daniel V. Gallery had no right, title or interest in the same. He recommended a decree establishing the rights of the parties accordingly, and partition. To this report Mary J. and Daniel V. Gallery filed forty-six objections, which were overruled by the master and were heard as exceptions by the chancellor. On the hearing before the chancellor two of the exceptions were sustained: First, that the complainant and his co-tenant did not have color of title made in good faith; and second, that the running of the Statute of Limitations was suspended by the pendency of the ejectment suit in the superior court during the period covered by the limitation of title proved by the complainant. The bill was

dismissed for want of equity at the complainant's costs, and he appealed.

On November 28, 1881, the county clerk of Cook county made and delivered to Asahel Gage a deed of the lot under a tax sale of September 4, 1879, and the deed was recorded in the recorder's office on November 29, 1881. On September 5, 1882, Gage and wife made and delivered to Henry H. Gage a quit-claim deed purporting to convey title to the lot. Henry H. Gage died on May 7, 1911, having devised all his real estate to his widow, Mary B. Gage. The premises had been vacant until 1899, when Henry H. Gage built a fence enclosing them, and since that time they have been enclosed and cultivated or used for pasturage by tenants of Henry H. Gage and his successors in title. On November 12, 1912, Mary B. Gage conveyed an undivided 1/50th of the lot to her son, the complainant, Stanley K. Gage, and the remaining 49/50ths to the Chicago Title and Trust Company in trust for herself. The solicitor for the complainant offered receipts for taxes and special assessments from 1877 up to the time of the hearing, but as the limitation-period claim began in 1908 the master regarded the receipts for taxes prior to that time as immaterial and admitted receipts showing payment of taxes and special assessments beginning with the general taxes of the year 1908, all of which had been paid by Henry H. Gage in his lifetime, or since his death by his successors in title. It will be seen that proof of color of title, possession and payment of taxes for the period required by section 6 of the Limitation act was complete, and the only possible question concerning color of title was whether it was acquired in good faith.

It is argued that only legal titles being involved, the remedy of the complainant was by petition for partition, in which the defendants might have had a trial by jury. The statute retains the jurisdiction in equity, and by section 39 courts of equity may investigate and determine all questions

of conflicting or controverted titles.   The jurisdiction is concurrent, and the power of a court of equity embraces all claims and titles without regard to their nature.   *Henrichsen* v. *Hodgen,* 67 Ill. 179; *Gage* v. *Lightburn,* 93 id. 248; *Gage* v. *Reid,* 104 id. 509; *Wilson* v. *Dresser,* 152 id. 387; *Hurlbut* v. *Talbot,* 273 id. 356.

The plea in abatement of this action alleging the bringing of the ejectment suit in the superior court on June 17, 1908, was set down for hearing and overruled, and by the answer to the bill the plea was waived.   The claim that the Statute of Limitations was suspended by the bringing of that suit was presented as a matter of defense in the answer, but on exception that part of the answer was stricken out and there is no cross-error questioning the ruling.   Notwithstanding the waiver of the plea by the answer and the elimination of the allegations on exceptions to the answer, one of the two grounds of the decree was that the Statute of Limitations was suspended by the pendency of the ejectment suit in the superior court during the period covered by the limitation title proved by the complainant.   There was no merit in either.   The facts alleged were, that the ejectment suit was brought by William J. Onahan and Mary J. Gallery; that they filed their declaration claiming title in fee simple in Mary J. Gallery subject to the dower of Onahan; that Henry H. Gage filed a plea of not guilty, and the suit was pending until the death of Gage, on May 7, 1911.   He was the sole defendant and at common law the cause would have abated.   By the statute, if a sole defendant dies before final judgment or decree the action does not on that account abate if it might be originally prosecuted against the heir, devisee, executor or administrator, but the plaintiff, petitioner or complainant may suggest such death on the record and shall by order of court have summons against such person or legal representative, after which it may proceed as if it had been originally commenced against him.   The statute fixes no time for revival, but it

must be done within a reasonable time. The plaintiffs did not avail themselves of the privilege, and this suit was begun five years after the death of Henry H. Gage. Afterward, on May 18, 1917, a summons was issued against Mary B. Gage, Stanley K. Gage and the Chicago Title and Trust Company, and was returned, "The within named defendants not found in my county this June 4, 1917." The pendency of a suit begins with the service of process or appearance, when the court acquires jurisdiction, power or control of the subject matter and parties until final judgment. (*Hallorn* v. *Trum,* 125 Ill. 247; *Lyon* v. *Moore,* 259 id. 23.) The ejectment suit was pending from the time when Henry H. Gage was served and appeared or filed his plea, until his death, but it cannot be said that it was pending during the six years after his death, before summons was issued against the complainant, Mary B. Gage and the Chicago Title and Trust Company; and even then there was no service of process, the return showing on its face that there was no intention to serve at least one of the defendants, the Chicago Title and Trust Company. The right to revive the suit was lost, and it was the duty of the superior court of its own motion to enter an order abating the ejectment suit. *Life Association of America* v. *Fassett,* 102 Ill. 315.

The matter set up in the answer concerning the ejectment suit was no defense if it had not been stricken out on exception. It did not suspend the Statute of Limitations while the suit was pending against Henry H. Gage. The right to interpose the defense of the Statute of Limitations was fixed as of that date for the purpose of that suit and no other. The plaintiff in an ejectment suit asserts his title at the commencement of the suit, and if the suit is prosecuted to judgment a defense of the Statute of Limitations would only be permissible up to that time. The limitation statute has made no exception that the statute can be arrested by the commencement of a suit, and the courts have no right to make one by judicial construction. (*Mil-*

*ler* v. *Pence,* 132 Ill. 149.)   Disregarding the fact that the plea of another suit pending alleged an action at law and was presented in abatement of a suit in equity, where the procedure and manner of execution were different and the judgment or relief would not be the same, and also disregarding the fact that the plea was waived by answer and exception sustained to the same matter set up in the answer, the conclusion of the chancellor was wrong.

It is contended that the tax deed was not color of title because the seal annexed was the seal of the county court, and therefore the instrument was not sealed.   If the wrong seal had been used the question whether the deed would or would not be color of title is not involved, because the right seal was used.   The deed was in the precise form prescribed by section 221 of the Revenue act, and it cannot be said to be defective because it followed that form, and the seal was the seal therein prescribed.   The section nowhere says that the seal of the county clerk shall be used, but provides that the deed made by the county clerk under the official seal of his office shall be recorded.   The county clerk occupies two offices,—one as a keeper of the county records and the other as keeper of the records of the county court,— and the seal of the court is an official seal of his office as clerk of the court.   There would have been better ground for argument if the seal of the county clerk had been used instead of the seal prescribed by the statute.   The proposition is quite different from the one in *McChesney* v. *People,* 174 Ill. 46, and *McCraney* v. *Glos,* 222 id. 628, where the question was whether the delinquent list was filed in the proper office, and the seal showed the filing among the county records while the statute required the list to be filed as a part of the records of the county court.

The only remaining question is whether the color of title was acquired in good faith, and the inquiry begins with the legal presumption of good faith until the contrary is shown to exist by affirmative proof.   (*McConnel* v. *Street,* 17 Ill.

253; *Simons* v. *Drake,* 179 id. 62; *Dawson* v. *Edwards,* 189 id. 60.) To overcome the presumption the evidence must show an intent to deceive, mislead or defraud, which would constitute bad faith. It is not necessary that the title, when traced back to its source, should prove an apparently legal and valid title. (*Kruse* v. *Wilson,* 79 Ill. 233; *Nelson* v. *Davidson,* 160 id. 254; *Clayton* v. *Feig,* 179 id. 534.) The supposed defects all relate to the proceedings for obtaining the tax deed to Asahel Gage, while the color of title claimed was through the deed to Henry H. Gage. Whether the tax deed was good color of title or not is immaterial unless in some way it affects the question of good faith of Henry H. Gage in acquiring his title from Asahel Gage, and it is not material that Henry H. Gage may have had actual knowledge of infirmities in the title of his grantor. (*Coward* v. *Coward,* 148 Ill. 268; *Keppel* v. *Dreier,* 187 id. 298.) If the alleged defects are considered for any purpose they are not of the slightest importance as showing or tending to show bad faith. One which is typical of all is, that an affidavit made several months before the expiration of the period of redemption from the tax sale stated the time for redemption would expire on September 4, 1881, which was the date when the statutory period would come to an end, but, as a matter of fact, it would be Sunday, and under the law there would be a right to redeem on Monday, September 5. It is perfectly evident that the person making the affidavit either did not observe that September 4 would be Sunday or was ignorant of the law giving a right to redeem on the next day. To say that any intention to deceive or defraud was manifested is absurd. There were three affidavits, one by Henry H. Gage, another by William R. Morley and another by William J. Fortunate, all as agents for Asahel Gage. In Morley's affidavit he said that he visited the premises on April 27, 1881, for the purpose of serving a notice on the occupant, and found the same vacant, unoccupied and

no person in actual possession or occupancy thereof on said date. The objection to the affidavit is that he did not watch the premises continuously until the beginning of the three months' period for publication. Publication was first made on May 11, 1881, and the construction of the statute contended for cannot be entertained for a moment.

If there were any merit in any claim of a defect in the proceedings under which the deed to Asahel Gage was made it would go only to the question whether he acquired the absolute legal title to the lot, and none of them are of the slightest importance as showing or tending to show bad faith. The lot was assessed in no name and was vacant and unoccupied, but, in fact, the lot was owned by William J. Onahan, and notices were served on him and on the South Park Commissioners, Julius Rosenthal, A. M. Pence and Charles H. Ferry, who were alleged, on information and belief, to have or claim some interest in the premises. Not only was nothing proved having the slightest tendency to show any intent to mislead, deceive or defraud the owner, Onahan, but any suspicion of that kind was rebutted. To hold that any defect which would prevent the holder of a tax deed from acquiring the absolute paramount legal title is a defense against a limitation title would be to destroy and abolish the limitation law by making it ineffective for any purpose.

The decree was based on the pendency of the ejectment suit and want of good faith, and neither of them, or any other matter suggested by counsel, was any basis for the decree. Therefore the decree is reversed and the cause remanded, with directions to grant the relief prayed for in the bill and to order partition of the lot.

*Reversed and remanded, with directions.*